No. 87,788

STATE OF KANSAS, *Appellee*, v. DEREK DWAYNE BRICE, *Appellant*.

(80 P.3d 1113)

Opinion

filed December 12, 2003.

*Randall L. Hodgkinson*, deputy appellate defender, argued the cause, and *Shawn Minihan*, assistant appellate defender, was with him on the briefs for appellant.

*Steven W. Wilhoft*, county attorney, argued the cause, and *Carla J. Stovall*, former attorney general, and *Phill Kline*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Derek Brice was convicted by a jury of one count of aggravated battery in violation of K.S.A. 21-3414(a)(1)(A) and sentenced to 41 months' imprisonment. Brice appealed his conviction, and the Court of Appeals affirmed that conviction in *State v. Brice*, 31 Kan. App. 2d 293, 64 P.3d 444 (2003). This court granted Brice's petition for review.

The Court of Appeals' recitation of facts was not questioned by Brice in his petition for review. The following facts are summarized from the Court of Appeals' opinion:

Brice replaced Ivory Kelly in a relationship with a woman named Nichole Kendrick, with whom Kelly had three children. Kendrick testified that Kelly did not like Brice, had threatened to "kick his ass," and had told her not to allow Brice to drive any of the three cars that Kelly and Kendrick owned together.

In February 2001, Kendrick and Brice dropped off one of the cars at Kelly's house. When Kelly asked Kendrick about her allowing Brice to drive one of their cars, Kendrick ignored him. Kelly then went to a store to buy food for the children and saw Brice and Kendrick in the parking lot. Kelly and Kendrick argued about Brice and the cars. Kelly instructed Brice to give Kendrick the keys to the car so she could take the children home.

As Kendrick left the parking lot, Kelly walked toward the store and Brice. When they were approximately 2 feet apart, Brice shot Kelly with a 9mm handgun.

Kendrick took Kelly to the emergency room. The treating physician, Dr. Myers, testified that the bullet missed bone, major arteries, veins, and nerves. He testified "that it was a through and through injury." A police officer and Kelly testified that the bullet entered Kelly's upper right thigh and exited through his right buttock.

Kelly was kept overnight at the hospital and checked by Dr. Myers the following day for circulation in the leg. He was given pain medication and released. Kelly said he limped for approximately 1 week but did not use crutches. He missed a week and a half of work and has a scar at both the entry and exit points.

Brice turned himself in to the police approximately 10 hours after the shooting. He was given a *Miranda* warning and consented to an interview. He told Detective Gofourth, who testified at trial as to the conversation, that Kelly and Kendrick pushed and grabbed each other at the store, which led to an altercation between Kelly and himself. Brice said Kelly knocked the car keys from his hand and struck him. First, Brice said he "just blacked out" and did not know if he shot Kelly or not. During a second interview, however, Brice said he shot Kelly because he was afraid of him. He admitted to having the gun because he was afraid of Kelly. Brice is much smaller than Kelly.

Brice raises four issues on appeal:

1. Did the trial court err in instructing the jury that the term "great bodily harm" means a "through and through bullet wound?"

2. Should the trial court have instructed the jury on lesser included offenses of severity levels 7 and 8 aggravated battery?

3. Did the trial court's exclusion of a defense witness violate due process?

4. Was the defendant deprived of a fair trial by cumulative errors?

As the Court of Appeals noted, Brice's first three issues on appeal are interrelated as each one involves the legal differences between bodily harm and great bodily harm under K.S.A. 21-3414.

The first two issues involve what instructions should have been given, and there is a significant overlap in the reasoning on these two issues. For this reason, these two issues will be discussed and considered together.

In reviewing jury instructions, an appellate court is required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. *State v. Mitchell*, 269 Kan. 349, 355, 7 P.3d 1135 (2000).

With regard to all the instructions given in this case, the Court of Appeals stated:

"The State asks us to look at all of the instructions, especially No. 8, which stated:

'The defendant is charged with the crime of level 4 aggravated battery.

'The defendant pleads not guilty.

'To establish this charge, each of the following claims must be proved:

'1. That the defendant intentionally caused great bodily harm to another person, to-wit: Ivory Kelly; and

'2. That this act occurred on or about the 11th day of February, 2001, in Labette County, Kansas."

. . . .

"When we look at all of the jury instructions in this case as *Mitchell* teaches us to do, we find the elements of level 4 and level 5 aggravated battery which are required to be proved beyond a reasonable doubt are correctly set forth in instructions Nos. 8 and 10. Instruction No. 11 relates to Brice's claim of self-defense and is clearly stated. The next two instructions, Nos. 12 and 13, are essentially definitional instructions, as is the complained-of instruction No. 14 regarding the through and through bullet wound.

"Instruction No. 12 reads: 'As used in these instructions, the term Intentional Conduct means, conduct that is purposeful and willful and not accidental. The terms "knowing," "willful," "purposeful," and "on purpose" are included within the term "intentional."'"

"Instruction No. 13 reads:

'As used in these instructions, the term Reckless Conduct means, conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger. The terms "gross negligence," "culpable negligence," "wanton negligence" and "wantonness" are included within the term "recklessness" as used in this code.'" 31 Kan. App. 2d at 305-06.

As we have seen, the jury was instructed that Brice was charged with severity level 4 aggravated battery and that to establish the charge it must be proved that he intentionally caused great bodily harm to Ivory Kelly under K.S.A. 21-3414(a)(1)(A). The jury also was instructed on the lesser offense of recklessly causing great bodily harm under K.S.A. 21-3414(a)(2)(A). The instruction (No. 14) that is at issue stated: "As used in these instructions, the term Great Bodily Harm means, a 'through and through bullet wound.' " The jury found Brice guilty of severity level 4 intentional aggravated battery.

Various degrees of aggravated battery are set forth in K.S.A. 21-3414, which states:

"(a) Aggravated battery is:

(1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or

(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

(2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or

(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.

"(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto."

An essential element of severity level 4 aggravated battery is great bodily harm or disfigurement. As the Court of Appeals noted, disfigurement did not become a jury question in the present case. Hence, the Court of Appeals' discussion centered on the differences between the terms "bodily harm" and "great bodily harm." 31 Kan. App. 2d at 299.

In considering whether the trial court properly instructed the jury that a through and through bullet wound constituted great bodily harm, the Court of Appeals reviewed cases that involve the current statutory definitions of aggravated battery, which became effective in 1993. See L. 1993, ch. 291, sec. 29. The Court of Appeals had to expand the precedent set by those cases in approving the trial court's instruction. 31 Kan. App. 2d at 298-304.

The first case discussed by the Court of Appeals was *State v. Ochoa*, 20 Kan. App. 2d 1014, 895 P.2d 198 (1995), which was largely disapproved in *State v. Valentine*, 260 Kan. 431, 435, 921 P.2d 770 (1996). One shot fired by Ochoa hit a victim in the abdomen, missed vital organs, and went out through the victim's back. He shot another victim in both calves, and a third victim was hit in the leg by something that caused a small bruise. The Court of Appeals stated that the question of whether Ochoa inflicted bodily harm or great bodily harm was a fact question to be decided by the jury. 20 Kan. App. 2d at 1020. Accordingly, the *Ochoa* Court of Appeals concluded that the trial court's failure to instruct the jury on the lesser included offenses of severity levels 5, 7, and 8 aggravated battery was reversible error. 20 Kan. App. 2d at 1021.

In *Valentine*, the defendant fired four or five shots at the victim. One bullet struck him in the arm, another severed his spine and paralyzed him from the waist down. Relying on *Ochoa*, Valentine argued that the trial court erred in failing to instruct the jury on the lesser included offense of severity level 7 aggravated battery. The court disagreed with the Court of Appeals:

"In *Ochoa*, the victim received a 'through and through' bullet wound. The bullet entered the victim's stomach and exited through his back without hitting any vital organs. A 'through and through' bullet wound in the abdomen does not present a question of fact as to whether it is mere bodily harm or great bodily harm. This constitutes great bodily harm. See *State v. Whitaker*, 260 Kan. 85, 917 P.2d 859 (1996). There may be instances where a bullet wound is not 'great' bodily harm when, for example, it grazes the skin, but we cannot envision a 'through and through' bullet wound, as occurred in *Ochoa*, that does not amount to great bodily harm. That part of *Ochoa*, inconsistent with this opinion, is disapproved. As such, we have no difficulty in finding that a bullet wound which severs the spinal cord and causes paralysis, a much worse wound than a through and through bullet wound, qualifies as great bodily injury as a matter of law. The trial court did not

err when it did not give an instruction on level 7 aggravated battery. The defendant was either guilty of level 4 aggravated battery or not guilty." 260 Kan. at 435.

Based on *Valentine* and testimony in the present case, the *Brice* Court of Appeals stated that "the 'through and through' bullet wound in our case must be considered to amount to great bodily harm as a matter of law and lesser included instructions of severity levels 7 and 8 'bodily harm' aggravated battery were not appropriate or required." 31 Kan. App. 2d at 301. The Court of Appeals continued its inquiry by examining *State v. Whitaker*, 260 Kan. 85, 917 P.2d 859 (1996), which was cited in *Valentine*.

In *Whitaker*, which was decided a few months before *Valentine*, the issue was sentencing. In that context, the court said:

"Whether bodily harm is great is generally a question of fact for the jury, not the trial judge. See *State v. Sanders*, 223 Kan. 550, 552, 575 P.2d 533 (1978); *State v. Ochoa*, 20 Kan. App. 2d 1014, 1020, 895 P.2d 198 (1995). Here, however, where the determination of great bodily harm is made in the context of classifying the severity level of a crime, the trial judge is required to explore that question and determine if great bodily harm occurred.

"Did great bodily harm occur? The facts indicate that Neal had an intent to cause great bodily harm. The police officer received a 'through and through' wound to his right arm, although a more damaging injury could have occurred had the officer been hit in a more vital area of his body or if the bullet had struck a bone. The officer missed 3 days of work as a result of his injury. The officer here suffered more than a mere bruise or scratch. The sentencing judge properly classified Whitaker's offense as a severity level 3 crime based on the intent to cause great bodily harm." 260 Kan. at 94.

Commenting on *Whitaker* in the present case, the *Brice* Court of Appeals stated: "The language in *Whitaker* makes it clear that in the context of classifying the severity level of a crime the trial judge is required to explore the question and make a determination from the facts or testimony. *Whitaker* can be expanded in its reasoning or limited in its holding to only sentencing matters." 31 Kan. App. 2d at 302.

The most recent aggravated battery case included in the Court of Appeals' discussion was *State v. Moore*, 271 Kan. 416, 23 P.3d 815 (2001), in which the defendant used a hot iron to burn his victim's legs, breast, and inner thighs. Moore was charged with intentionally causing great bodily harm or disfigurement. The trial

court declined to instruct on the lesser offense of simple battery; see K.S.A. 2002 Supp. 21-3412(a). The court quoted the following principle governing when lesser offense instructions are required from *State v. Gibbons*, 256 Kan. 951, 955, 889 P.2d 772 (1995): " 'Where there is no substantial evidence applicable to the lesser degrees of the offense charged, and all of the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are not necessary.' " *Moore*, 271 Kan. at 419. Stating that the victim's injuries were not trivial, minor, or in the nature of bruising, the *Moore* court framed the question before it as "whether a reasonable jury could have found that the injuries constituted 'moderate' harm, which would necessitate a giving of a simple battery instruction. [Citation omitted.]" 271 Kan. at 420. The court concluded that

"no reasonable jury could have found the injuries to constitute moderate harm. Rather, the offense if committed, was clearly of the higher degree, and the trial court did not err in failing to give an instruction on the lesser offense of simple battery, as there was simply no evidence from which a reasonable jury could have convicted the defendant of that offense. See *Gibbons*, 256 Kan. at 955." 271 Kan. at 421.

After the Court of Appeals in the present case discussed *Moore*, it stated:

"We likewise conclude that based on the evidence before the trial court, the offense, if committed, was clearly either a severity level 4 (intentional) or level 5 (reckless) aggravated battery based on great bodily harm resulting from the 'through and through bullet wound' as a matter of law. The evidence excluded any theory of guilt of aggravated battery of the lesser severity levels. It was not error to refuse to give instructions relating to levels 7 and 8 aggravated battery. The holdings and logic of *Whitaker*, *Valentine*, and *Moore* clearly support our decision." *Brice*, 31 Kan. App. 2d at 304.

An additional question, not only whether lesser offense instructions were proper, is raised by the trial court's instructing the jury in the present case that great bodily harm means a through and through bullet wound. The additional question requires an extension of the holdings and logic of *Whitaker*, *Valentine*, and *Moore*.

The *Brice* Court of Appeals majority found no reason not to make the extension:

"If it is necessary for the trial court to consider the evidence and find that a through and through gunshot wound has been inflicted on the victim and the Kansas Supreme Court has legally defined this as constituting great bodily harm, why is it not proper to so instruct the jury? Logic would tell us this is nothing more than providing an applicable definition for the jury's usage in considering all of the instructions." 31 Kan. App. 2d at 304.

Judge Knudson dissented from the majority's holding that the trial court did not err when it instructed the jury: "As used in these instructions, the term Great Bodily Harm means, a 'through and through bullet wound.'" He wrote that, although "the majority's holding is logical and an understandable expansion in light of the holdings" in *Valentine* and *Whitaker*, it would improperly infringe upon a defendant's rights under the Fifth and Sixth Amendments to the United States Constitution "to have a jury determine guilt beyond a reasonable doubt on *every element* of a charged offense. *United States v. Gaudin*, 515 U.S. 506, 510, 132 L. Ed. 2d 444, 115 S. Ct. 2310 (1995)." *Brice*, 31 Kan. App. 2d at 308-09.

*Gaudin*, 515 U.S. 506, is a unanimous decision of the United States Supreme Court, holding that it was unconstitutional for the trial judge to refuse to submit to the jury the question of materiality of defendant's statements in a prosecution for making false statements on Federal Housing Administration (FHA)/Department of Housing and Urban Development (HUD) loan documents. Gaudin was charged with knowingly inflating the appraised value of the mortgaged property and misrepresenting which party was to pay closing costs. The government called several FHA/HUD program administrators as witnesses to explain why the information Gaudin allegedly falsified was important. The trial judge instructed the jury that one of the elements the government was required to prove in order to convict Gaudin was that the alleged false statements were material to the activities and decisions of HUD. "But, the court further instructed, '[t]he issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements

charged in the indictment are material statements.' " 515 U.S. at 508.

The Ninth Circuit Court of Appeals reversed Gaudin's convictions, holding that "taking the question of materiality from the jury denied respondent a right guaranteed by" the Due Process Clause of the Fifth Amendment and the Sixth Amendment right of criminal defendants to a trial by an impartial jury. 515 U.S. at 509. On certiorari, the government argued that the principle of requiring the jury to decide all the elements of a criminal offense was inapplicable because the question of materiality was a question of law. The Supreme Court rejected the argument on the grounds that materiality is a mixed question of law and fact and that mixed questions historically have been determined by juries in reaching criminal verdicts. 515 U.S. at 512-15. The Supreme Court stated:

"The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without 'due process of law'; and the Sixth, that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 277-278[, 124 L. Ed. 2d 182, 113 S. Ct. 2078] (1993)." 515 U.S. at 509-10.

In affirming the judgment of the Ninth Circuit Court of Appeals, the Supreme Court concluded: "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged. The trial judge's refusal to allow the jury to pass on the 'materiality' of Gaudin's false statements infringed that right." 515 U.S. at 522-23.

In our Court of Appeals, Brice argued that his right to have every element of the offense determined by the jury was violated by the through and through bullet wound instruction. Although Brice's constitutional argument is very nearly the same as Judge Knudson's dissenting view, the approach taken by Brice in the Court of Appeals and pursued in this court with additional authority is less direct than that of the dissenting judge. Because the trial court, instead of refusing to allow the jury to pass on great bodily harm,

instructed the jury that great bodily harm means a through and through bullet wound, Brice identifies the error in the instruction as creating a burden-shifting presumption rather than as taking the issue from the jury. He contends that the challenged instruction creates a mandatory presumption by instructing the jury that it must infer the presumed fact of great bodily harm if the State proved that Kelly suffered a through and through bullet wound.

The Court of Appeals' majority, however, had the opposite view based on the authorized practice in Kansas courts of defining terms for jurors. The court stated that "[e]very element of the crime charged remained to be proved beyond a reasonable doubt. It is not improper or unconstitutional to give a jury a proper definitional instruction as was done in our case." 31 Kan. App. 2d at 306. The Court of Appeals' majority compared the great bodily harm instruction to "the myriad of definitional instructions we find in PIK Crim. 3d 53.00" (definitions) and to PIK Crim. 3d 56.04 (homicide definitions). 31 Kan. App. 2d at 306. The great bodily harm instruction in the present case was formatted as suggested in the introduction of PIK Crim. 3d 53.00: " 'As used in these instructions, the term _____ (means) (includes) _____.' "

Brice also argues that the complained-of instruction removed a required element from the case in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The Court of Appeals rejected Brice's argument, stating that *Apprendi* "involves sentencing for actions not found by a jury beyond a reasonable doubt and is not applicable to our factual situation." *Brice*, 31 Kan. App. 2d at 307. There is no reason to reconsider this argument.

The issue we must resolve is that stated by Judge Knudson: Whether the through and through bullet wound instruction deprived Brice of his rights under the Fifth and Sixth Amendments to have a jury determine guilt beyond a reasonable doubt on *every element* of a charged offense. This case can be distinguished from *Gaudin*, the case cited by Judge Knudson, but it is a distinction without a difference. In *Gaudin*, as we have seen, the constitutional error was in the trial judge's not submitting the materiality element of the charged offense to the jury. In the present case, the element

of great bodily harm was submitted to the jury, but in instructing the jury that great bodily harm means what the State's evidence showed, the trial judge effectively instructed the jury that the element had been proved. In both cases, the jury was told that an element had been established by the evidence. The *Brice* Court of Appeals' majority called the challenged instruction "an applicable definition," 31 Kan. App. 2d at 304, but the dissenting judge disagreed: "Instruction No. 14 removes from jury consideration whether the State proved great bodily harm beyond a reasonable doubt. That decision was made by the trial court and effectively eliminated the defendant's right of trial by jury on that element of the crime." 31 Kan. App. 2d at 310.

In addition to citing *Gaudin,* Judge Knudson quoted the following from *United States v. Mentz*, 840 F.2d 315, 319 (6th Cir. 1988):

" 'The Sixth Amendment to the Constitution guarantees to a defendant the opportunity for a jury to decide guilt or innocence. *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). A necessary corollary is the right to have one's guilt determined only upon proof beyond the jury's reasonable doubt of every fact necessary to constitute the crime charged.' " 31 Kan. App. 2d at 309 (Knudson, J., dissenting).

Mentz was charged with robbing two banks in August 1986 in violation of 18 U.S.C. § 2113(a) (1982), which required the government to prove that the deposits of the banks were insured by the Federal Deposit Insurance Corporation (FDIC) at the time of the robberies. At the close of the government's case, the defendant argued for dismissal of the charges on the ground that the evidence failed to establish that the banks were FDIC insured at the time the robberies occurred. The government on this element called one witness for each bank involved. One witness testified that his bank was federally insured and produced the bank's FDIC certificate, dated 1985; the other witness identified a letter from the FDIC, dated January 1985, certifying that his bank was federally insured and testified that "in his eighteen years of service with the bank he was not aware of any cancellation of FDIC insurance." 840 F.2d at 318. The trial judge denied the motion and later, over Mentz' objection, instructed the jury that the deposits of the banks were insured by the FDIC at the time the robberies occurred. The

federal Court of Appeals reversed Mentz's convictions, concluding that his Sixth Amendment right to a jury trial had been violated. 840 F.2d at 323.

The reasoning of the Sixth Circuit Court of Appeals is built on the established roles of judge and jury:

"In a criminal trial, the trial judge and the jury have well-defined roles, refined over many years of constitutional adjudication. The trial judge instructs the jury on the law applicable to the issues raised and, in appropriate circumstances, may comment on the evidence. *United States v. White Horse*, 807 F.2d 1426, 1430 (8th Cir. 1986); *United States v. Johnson*, 718 F.2d 1317, 1322, 1324-25 (5th Cir. 1983) (en banc); 8A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 30.05, at 30-40 (1987). The jury then independently determines the facts, and applies the law to those facts, in reaching its fateful decision. *White Horse*, 807 F.2d at 1430; *Johnson*, 718 F.2d at 1325. *See also* 2 C. Wright, Federal Practice & Procedure § 485, at 711 (1982). However, the trial judge invades the jury's province when, instead of simply instructing on the law, he applies the law to facts he has determined. *See White Horse*, 807 F.2d at 1430 ('when the judge is no longer deciding the law that applies to the evidence, but rather is applying the law to the facts—facts that are determined after assessing the probative value of evidence introduced at trial—the judge has invaded the jury's province.').

"There can be little doubt that a trial judge commits error of constitutional magnitude 'when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding.' *Id*. at 1429 (citation omitted). This is tantamount to a directed verdict for the prosecution, a result that is condemned by the Constitution. [*United States v.*] *Martin Linen Supply Co.*, 430 U.S. [564,] at 572-73, [51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977)]; *United Brotherhood of Carpenters & Joiners of America* [*v. United States*], 330 U.S. [395,] at 408, [91 L. Ed. 973, 67 S. Ct. 775 (1947).

"We now consider the district court's jury instruction, which we read in its entirety. *Francis v. Franklin*, 471 U.S. [307,] at 315, [85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985)]; *Cupp v. Naughten*, 414 U.S. 141, 146-47, 99 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *United States v. Mahar*, 801 F.2d 1477, 1498 (6th Cir. 1986). We agree with Mentz that the trial judge invaded the jury's province by instructing that body, in clear and unequivocal language, that the banks were FDIC insured at the time the robberies occurred. His conclusive statement left no room for the jury to believe otherwise. The judge improperly cast himself in the role of trier of fact, and directed a verdict on an essential element of the bank robbery charge. His instructions had the effect of relieving the government of its burden of proving, beyond the jury's reasonable doubt, that the accused committed the crimes charged. *See Glenn v. Dallman*, 686 F.2d 418, 421 (6th Cir. 1982) ('The Consti-

tutional right to a jury puts the government to the burden of proving the essential elements of the crime to the jury's satisfaction. . . .').

"It is not important that the jury might have reached a similar conclusion had it been given an opportunity to decide the issue under a correct instruction. A plea of not guilty places all issues in dispute, 'even the most patent truths.' *United States v. Goetz*, 746 F.2d 705, 708 (11th Cir. 1984) (quoting *Roe v. United States*, 287 F.2d 435, 440 [5th Cir.], *cert. denied* 368 U.S. 824, 82 S. Ct. 43, 7 L. Ed. 2d 29 (1961)) (and cases cited therein). *See also United States v. Argentine*, 814 F.2d 783, 788 (1st Cir. 1987); *Johnson*, 718 F.2d at 1322; *United States v. Natale*, 526 F.2d 1160, 1167 (2d Cir. 1975), *cert. denied* 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 193 (1976). The First Circuit has succinctly stated this point: 'Whatever probative force the government's proof possessed, the jury had the power to accept or reject it—or to find it insufficiently persuasive. The defendant had a correlative right to free and unhampered exercise by the jury of all its powers.' *Argentine*, 814 F.2d at 788.

"Accordingly, the district judge committed error when he relieved the government of establishing, and the jury from finding beyond a reasonable doubt, every essential element of a violation of 18 U.S.C. § 2113(a)." 840 F.2d at 319-20.

In the present case, the uncontroverted evidence was that Brice inflicted a through and through bullet wound to the victim. Expanding *Valentine*, the trial judge instructed the jury that great bodily harm means a through and through bullet wound. In doing so, although not actually instructing the jury that Brice caused great bodily harm to Kelly, the trial judge left no room for the jury to believe otherwise. Clearly, the trial judge led the jury into thinking that an element of the charged offense had been proven so that the jury could not render a verdict for Brice on the basis of a reasonable doubt that he caused great bodily harm to Kelly. The trial judge in effect directed a verdict on an essential element of the aggravated battery charge, "a result that is condemned by the Constitution." See *Mentz*, 840 F.2d at 320.

The majority opinion of the Court of Appeals asks: "If it is necessary for the trial court to consider the evidence and find that a through and through gunshot wound has been inflicted on the victim and the Kansas Supreme Court has legally defined this as constituting great bodily harm, why is it not proper to so instruct the jury?" *Brice*, 31 Kan. App. 2d at 304. The Court of Appeals' answer to its own question was: "Logic would tell us this is nothing more than providing an applicable definition for the jury's usage

in considering all of the instructions." 31 Kan. App. 2d at 304. The majority further noted that PIK Crim. 3d 53.00 "allows the definition to be tailored to the facts of the case." 31 Kan. App. 2d at 306. Here, however, the trial judge went beyond tailoring a definition to the evidence. He instructed the jury that the evidence, a through and through bullet wound, and an essential element of the offense, great bodily harm, were synonymous. In other words, the trial judge told the jury that the State's evidence established the element of great bodily harm. Such an instruction invades the province of the jury as the factfinder and violated Brice's Fifth and Sixth Amendment rights to have the jury determine his guilt or innocence.

The Court of Appeals' majority opinion stated that "[t]he trial court recognized the clear appellate authority from opinions of the Kansas Supreme Court in *Valentine, Whitaker,* and *Moore* and properly instructed the jury that as a matter of law, a through and through gunshot wound *could* constitute great bodily harm." (Emphasis added.) *Brice,* 31 Kan. App. 2d at 306. In stating its conclusion in this way, the majority significantly softened the actual jury instruction by inserting the contingent verb "could." In fact, the jury was told that great bodily harm means a through and through bullet wound. A through and through bullet wound had been shown by undisputed evidence, thus satisfying the required element of great bodily harm.

This court has stated in the context of a challenge to a trial court's failure to instruct on lesser offenses that as a matter of law a through and through bullet wound constitutes great bodily harm. *State v. Valentine,* 260 Kan. 431, 435, 921 P.2d 770 (1996). What our court said about when lesser included offense instructions must be given or not given is as follows:

"A defendant has a right and the trial court has a duty to instruct on lesser included offenses which are supported by substantial evidence. Where there is no substantial evidence applicable to the lesser degrees of the offense charged, and all the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are not necessary." 260 Kan. 431, Syl. ¶ 3.

In the present case, the trial court instructed on intentionally or recklessly causing great bodily harm and refused to instruct on the

lesser offenses of intentionally or recklessly causing bodily harm. Assuming for the purpose of this discussion that all the evidence taken together was of great bodily harm, instructions relating to bodily harm were unnecessary and the trial court acted properly in limiting the jury's consideration to great bodily harm by not instructing on the lesser degree. In making its determination, the trial court relied on this court's treatment of a through and through bullet wound as great bodily harm as a matter of law. Where this court has done so, either lesser included offense instructions or sentencing were in issue. *Valentine* and *Whitaker* are not precedents for the trial judge's *instructing the jury* that a through and through bullet wound is great bodily harm as a matter of law. As even the Court of Appeals' majority said, the trial court "expanded" beyond the reasoning and results of *Valentine* and *Whitaker* in instructing the jury that an element of the charged offense means what the State's evidence showed. See *Brice*, 31 Kan. App. 2d at 301-02, 304.

The difference in this case between the application of the through and through bullet wound legal conclusion in not instructing the jurors on lesser included offenses and instructing them that the term great bodily harm means what the evidence showed is that the former limits the jury's consideration to elements supported by the evidence and the latter effectively removes an element from the jury's consideration by equating the degree of harm with the evidence. It is a fine point, but one that due process requires. It is a trial court's time-honored responsibility to examine the evidence to determine whether a defendant can be convicted of a lesser included offense. The trial court accordingly guides the jury's deliberations by giving or not giving lesser included offense instructions. By applying the legal conclusion to limit the jury's consideration to the charged offense, the trial judge did not invade the province of the fact finder. In instructing the jury that as a matter of law an element of the offense is the same as the evidence, however, the trial court does invade the factfinder's province. The same legal conclusion, *i.e.*, that a through and through bullet wound is great bodily harm, may be reached by a trial court in determining whether a defendant can be convicted of a lesser in-

cluded offense, but it may not be the subject of an instruction that decides an element for the jury. Thus, this court's ruling in *Valentine* need not be disturbed; however, we do disapprove of the statement in *Valentine*, *Whitaker*, and *Moore* that a through and through bullet wound is great bodily harm as a matter of law. Whether there is evidence in the case to support the giving of a lesser included instruction is a determination to be made by the trial court. If there is evidence that the harm was slight, trivial, moderate, or minor, then the trial court must give a lesser included instruction. Thus, a trial court could determine that a bullet wound, even one that missed bone, major arteries, veins, and nerves, is not slight, trivial, moderate, or minor and will not support a lesser included instruction for battery.

There was no error in the trial court refusing to instruct on the lesser included offenses of the charged offense, *i.e.*, charges of intentionally or recklessly causing bodily harm. However, the rationale for such refusal was faulty in that the trial court, in considering the question whether lesser included offense instructions should be given, relied on our statement that a through and through bullet wound constitutes great bodily harm as a matter of law. Since we have disapproved of that statement, such reliance is no longer acceptable. The trial court must view the evidence of the harm caused to determine if it would support a finding of mere bodily harm. Here, the evidence does not support the trial court giving a lesser included instruction for battery. As noted earlier in this opinion, this is a fine line to draw, but a necessary one. The judgment of a trial court, if correct, will be upheld even though the trial court relied upon the wrong reason for its decision. *State v. Bryant*, 272 Kan. 1204, Syl. ¶ 6, 38 P.3d 661 (2002).

Brice next contends that he was prevented from presenting his defense by the trial court's exclusion of the testimony of defendant's witness, Dr. Miller. The proffer of Miller's testimony showed that, in his opinion, Kelly suffered no disfigurement and the bullet wound sustained by Kelly did not amount to great bodily harm. As the *Brice* Court of Appeals stated, disfigurement was not at issue and thus not relevant: "Dr. Miller's opinion as to whether it existed would not have been admissible." 31 Kan. App. 2d at 308. The

Court of Appeals also found that Miller's expected opinion testimony on the degree of bodily harm, because it constituted a legal conclusion *and* contradicted this court's legal conclusion on a through and through bullet wound, was inadmissible. 31 Kan. App. 2d at 308.

The Court of Appeals reached the correct decision, but for the wrong reason. The basis for the admission of expert testimony is necessity arising out of the particular circumstances of the case. "The admission of expert testimony lies within the sound discretion of the trial court. Its decision will not be overturned absent an abuse of such discretion. One who asserts an abuse of discretion bears the burden of showing such abuse." *Irvin v. Smith*, 272 Kan. 112, 125, 31 P.3d 934 (2001). Dr. Miller's proffer was not an opinion as to a legal conclusion, but rather a factual conclusion. Further, it was an opinion on an element of the offense of which Brice was charged. It was an opinion as to an ultimate issue to be decided by the jury. As we said in *State v. Struzik*, 269 Kan. 95, Syl. ¶ 3, 5 P.3d 502 (2000):

"Although an expert may give an opinion on an ultimate issue as provided in K.S.A. 60-456(d), such witness may do so only insofar as the witness aids the jury in the interpretation of technical facts or assists the jury in understanding the material in evidence. An expert witness may not pass on the weight or credibility of evidence, for those matters are strictly within the province of the jury."

The State presented medical testimony as to the nature and extent of the through and through bullet wound to Kelly. Brice did not deny that he shot Kelly at close range. The State's evidence related to the nature, extent, treatment, and effect of the wound. There was nothing technical that Dr. Miller needed to interpret for the jury, nor did the jury need his assistance in understanding the evidence. Where, as here, the normal experience and qualifications of the jurors would allow them to draw proper conclusions from the evidence, expert testimony was not necessary. The trial court's exclusion of Dr. Miller's testimony was not an abuse of discretion.

We reverse Brice's conviction holding that the trial court's instruction violated Brice's rights granted by the Fifth and Sixth Amendments to the United States Constitution.

Since we are reversing Brice's conviction, there is no need to reach the question of cumulative error.

The judgment of the Court of Appeals is reversed, the judgment of the district court is reversed, and the case is remanded for a new trial.

GERNON and BEIER, JJ., not participating.

BRAZIL, S.J., and BARRY A. BENNINGTON, District Judge, assigned