NOT DESIGNATED FOR PUBLICATION

No. 112,284

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORDAN LESHORE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed October 30, 2015. Affirmed.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN, J., and JEFFREY GOERING, District Judge, assigned.

*Per Curiam*:  A jury convicted Jordan Leshore of two counts of aggravated battery, one count of aggravated assault, and one count of aggravated burglary. On appeal, Jordan argues that this court must reverse his convictions because the trial court erred by instructing the jury on the pattern jury instructions for Kansas (PIK) Crim. 4th 52.020. As discussed below, however, Jordan never objected to this instruction before the trial court. Furthermore, Jordan cannot establish that the trial court committed clear error by giving the PIK Crim. 4th 52.020 instruction. Accordingly, we affirm Jordan's convictions.

1

On February 18, 2013, Joseph Leshore stole marijuana from Jeffery Payne. Later that day, Jeffery, Brice Reed, Eric Roberts, and some other people retaliated against Joseph by attacking Joseph's mother, Maria Guzman. The group went to Maria's house where they broke her front window, and one person slapped Maria in the face. Following this incident, Jeffery and Eric went to a house they shared with Alecia Dawson, Michelle Meyer, and Michelle's four children.

Meanwhile, Maria called her other son, Jordan Leshore, and explained what had happened. When Jordan received this phone call, he was playing video games with his friends Brian Kienow and Sean Arevalo. Jordan decided to check on his mother, so he, Brian, and Sean drove over to Maria's house. At Maria's house, Jordan became very upset. At some point, Jordan decided to find his brother Joseph. Jordan, Brian, and Sean got back into the car to find Joseph.

When the group found Joseph, Joseph was driving in a car with his friends Troy Bell, Desmund Cantu, and John Cantu. After Jordan explained what had happened to Maria, Joseph got back into the car with his friends and sped off to Jeffery's house. Jordan, Brian, and Sean followed Joseph's car to Jeffery's house.

Jeffery, Eric, Alecia, and Michelle were watching a movie in the front room of their house when Joseph, Troy, and Desmund broke down the back door. Joseph had a knife, and Desmund had a handgun. Joseph, Desmund, and Troy surrounded Jeffery. Joseph repeatedly stabbed Jeffery. Shortly thereafter, Jordan ran inside the house and hit Jeffery while Joseph continued stabbing Jeffery. As Jordan was hitting Jeffery, he was screaming about his mother getting slapped. Additionally, during the fight, Desmund pointed his gun at Alecia and told her to "shut the F up." As the group left the house, Joseph swung his knife at Michelle, missing her leg but slicing open her sweatpants.

2

In total, Joseph stabbed Jeffery 23 times. Over his 6 week recovery, Jeffery nearly died multiple times but survived. As a result of his injuries, Jeffery lost a kidney and some mobility in one leg.

Under the theory of aiding and abetting, the State charged Jordan with the following: attempted first-degree murder of Jeffery, a severity level 1 person felony in violation of K.S.A. 2014 Supp. 21-5301(a) and K.S.A. 2014 Supp. 21-5402(a)(1); aggravated battery of Jeffery, a severity level 4 person felony in violation of K.S.A. 2014 Supp. 21-5413(b)(1)(A); aggravated battery of Michelle, a severity level 4 person felony in violation of K.S.A. 2014 Supp. 21-5413(b)(1)(C); aggravated assault of Alecia, a severity level 7 person felony in violation of K.S.A. 2014 Supp. 21-5412(b)(1); and aggravated burglary, a severity level 5 person felony in violation of K.S.A. 2014 Supp. 21-5807(b).

At Jordan's jury trial, Jeffery, Eric, Alecia, Michelle, as well as Jordan's friend, Brian, testified on behalf of the State. Both the State and the defense submitted proposed jury instructions to the trial court. The final jury instructions consisted of a combination of both the State's proposed instructions and the defense's proposed instructions. One of the final instructions stated: "If the State has proved that the defendant acted intentionally, then the State has proved as well the defendant acted knowingly." This instruction quotes PIK Crim. 4th 52.020, "proof of a higher culpable mental state proves the lesser." Jordan did not object to the inclusion of this instruction.

The jury ultimately found Jordan not guilty of attempted first-degree murder, but guilty of the aggravated batteries, the aggravated assault, and the aggravated burglary. The trial court sentenced Jordan to a controlling sentence of 75 months' imprisonment for the aggravated battery of Jeffery followed by 36 months' postrelease supervision. Regarding Jordan's other convictions, the trial court imposed concurrent terms of 12

3

months for the aggravated battery of Michelle, 12 months for aggravated assault of Alecia, and 32 months for the aggravated burglary.

*Did the Trial Court Err When It Instructed the Jury That Proof of a Higher Culpable Mental State Proves a Lesser Culpable Mental State?*

Although Jordan did not object to the jury instruction below, on appeal, Jordan argues that the trial court erred when it instructed the jury on PIK Crim. 4th 52.020, "proof of a higher culpable mental state proves the lesser." By giving this instruction, Jordan asserts that the trial court instructed the jury that "if [the jury] found that he acted intentionally in the aggravated burglary count," then the jury "need not determine whether [he] acted knowingly when considering the aggravated battery and aggravated assault" counts. As a result, Jordan asks this court to reverse his convictions. Nevertheless, the PIK Crim. 4th 52.020 instruction was both legally and factually appropriate. Accordingly, this court affirms Jordan's convictions.

*Standard of Review*

Under 2014 Supp. K.S.A. 22-3414(3):

"No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

Thus, when a defendant raises an instruction issue for the first time on appeal, as Jordan has done in this appeal, "'the standard of review is whether the instruction is clearly erroneous.'" *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012) (quoting *State v. Adams,* 294 Kan. 171, 183, 273 P.3d 718 [2012]).

4

In reviewing whether a jury instruction was clearly erroneous, an appellate court uses a two-step analysis: (1) the court must determine whether there was any error at all by "consider[ing] whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record;" and (2) if the court finds error, it must assess "whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *State v. Williams*, 295 Kan. at 506, Syl. ¶¶ 4, 5. "Reversibility is subject to unlimited review and is based on the entire record." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). Moreover, the party asserting that the trial court erred in instructing the jury has the burden to prove the degree of prejudice necessary for reversal. *Betancourt*, 299 Kan. at 135.

*The Jury Instructions*

As previously stated, the jury found Jordan guilty of one count of aggravated burglary, two counts of aggravated battery, and one count of aggravated assault. Under K.S.A. 2014 Supp. 21-5807(a)(1), a person commits an aggravated burglary by entering a structure without authority "with *intent* to commit a felony, theft or sexually motivated crime therein." (Emphasis added.) An aggravated battery occurs when a person "*knowingly* caus[es] great bodily harm to another person or disfigurement of another person . . . . or *knowingly* caus[es] physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2014 Supp. 21-5413(b)(1)(A) and (C). (Emphasis added.) Furthermore, a person commits an aggravated assault by "*knowingly* placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2014 Supp. 21-5412(a). (Emphasis added.) Thus, the culpable mental state associated with aggravated burglary is "intentionally," and the culpable mental state associated with aggravated battery and aggravated assault is "knowingly."

5

At Jordan's trial, the trial court provided the jury with instructions on the aggravated burglary charge, the aggravated battery charges under both K.S.A. 2014 Supp. 21-5413(b)(1)(A) and K.S.A. 2014 Supp. 21-5413(b)(1)(C), and the aggravated assault charge. Each instruction stated the elements of the crime, including the culpable mental state necessary to complete the crime. For instance, the aggravated burglary instruction stated: "The state must prove that Jordan Leshore committed the crime intentionally. A defendant acts intentionally when it is the defendant's desire and conscious objective to do the act complained about by the state." Both of the aggravated battery instructions and the aggravated assault instruction stated: "The state must prove that Jordan Leshore committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct the state complains about."

Following those instructions, the trial court instructed the jury that Jordan could be responsible for the crimes of his codefendants under the theory of aiding and abetting as stated in PIK Crim. 4th 52.140, "responsibility for crimes of another – intended and not intended." Next, the trial court instructed the jury on PIK Crim. 4th 52.020, "proof of a higher culpable mental state proves the lesser." This instruction stated: "If the State has proved that the defendant acted intentionally, then the State has proved as well the defendant acted knowingly." After this instruction, the trial court instructed the jury on PIK Crim. 4th 68.060, "multiple counts," which states in part:

> "Each crime charged against Jordan Leshore is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision to any other charge. Jordan Leshore may be convicted or acquitted on any or all of the offenses charged."

*The PIK Crim. 4th 52.020 Instruction Was Both Legally and Factually Appropriate*

On appeal, Jordan takes issue with the placement of the PIK Crim. 4th 52.020 instruction after the instructions detailing the elements of both of the aggravated battery charges, the aggravated assault charge, and the aggravated burglary charge. Jordan contends that the placement would have confused the jury, making the jury believe that the PIK Crim. 4th instruction "generally applied to the jury's deliberation." Jordan further contends that by placing the instruction where it did, the trial court told the jury that if the jury found that Jordan intentionally committed an aggravated burglary, then, "as a matter of law, [the knowingly] element of aggravated battery and aggravated assault had been established by the evidence." Jordan argues that the trial court "directed a verdict on an essential element," comparing the facts of his case to our Supreme Court's decision in *State v. Brice*, 276 Kan. 758, 80 P.3d 1113 (2003).

Nevertheless, as discussed below, Jordan's argument regarding the placement of the PIK Crim. 4th 52.020 jury instruction is incorrect. Jordan's comparison of his case to *Brice* is flawed. Moreover, the PIK Crim. 4th 52.020 jury instruction was both legally and factually appropriate.

First, Jordan's argument that the trial court's placement of the PIK Crim. 4th 52.020 instruction was confusing is baseless. As stated earlier, the trial court provided the jury with instructions detailing the elements of each of Jordan's charges. Each of those instructions included the definition of the culpable mental state associated with the charge. Then, the trial court instructed the jury on aiding and abetting as stated in PIK Crim. 4th 52.140. Following this instruction, the trial court instructed the jury on PIK Crim. 4th 52.020, "proof of a higher culpable mental state proves the lesser." Neither the placement of the PIK Crim. 4th 52.020 instruction nor the language of the PIK Crim. 4th 52.020 instruction suggests that the jury was required to find Jordan guilty of the aggravated battery charges and the aggravated assault charge if it found Jordan guilty of

7

the aggravated burglary charge. The PIK Crim. 4th 52.020 instruction simply states that if the State proved that Jordan acted intentionally, then the State also proved that Jordan acted knowingly. Furthermore, the PIK Crim. 4th 68.060 "multiple counts" instruction immediately following the PIK Crim. 4th 52.020 instruction clearly states that the jury must "decide each charge separately on the evidence and law applicable to it, uninfluenced by [its] decision as to any other charge." Thus, if there was any confusion, the PIK Crim. 4th 68.060 instruction resolved this confusion by instructing the jury that it had to decide each charge separately without considering whether Jordan was innocent or guilty of any other charges. As a result, Jordan's argument that the placement of the PIK Crim. 4th 52.020 instruction somehow confused the jury is unpersuasive.

Additionally, Jordan's comparison of his case to our Supreme Court's decision in *Brice*, 276 Kan. 758, is flawed. In *Brice*, the State charged Brice with aggravated battery. 276 Kan. at 759-60. Brice had shot a man; the bullet had entered the man's upper right thigh and had exited through the man's right buttock. *Brice*, 276 Kan. at 759-760. At Brice's jury trial, the trial court instructed the jury that to establish Brice was guilty of aggravated battery the jury must find that he intentionally caused great bodily harm to the victim. *Brice*, 276 Kan. at 762. The trial court also instructed the jury that the term "great bodily harm" means "a through and through bullet wound." *Brice*, 276 Kan. at 762. The jury found Brice guilty of the aggravated battery. On appeal, our Supreme Court reversed Brice's conviction, holding that the trial court directed a verdict on an essential element of the aggravated battery charge by instructing the jury that a through and through bullet wound constituted great bodily harm. *Brice*, 276 Kan. at 771, 775.

In this case, however, the trial court did not direct a verdict on an essential element of Jordan's charges. The trial court did not instruct the jury that if it found Jordan guilty of the aggravated burglary, then it must find Jordan guilty of the aggravated batteries and the aggravated assault. Instead, the trial court instructed the jury that if the State proved that Jordan acted intentionally, then the State had also proved that Jordan acted

8

knowingly. In the context of the jury instructions as a whole, the PIK Crim. 4th 52.020 instruction explained to the jury that if the State had proved that Jordan intentionally committed the aggravated batteries or the aggravated assault, then the jury could find Jordan guilty because the State had also proved that Jordan knowingly committed the aggravated batteries and the aggravated assault. Consequently, the instructions at issue in the *Brice* case are not comparable to the instructions at issue in Jordan's case.

More importantly, the trial court could not have erred by giving the PIK Crim. 4th 52.020 jury instruction because the instruction was both legally and factually appropriate. First, the language of the instruction was an accurate statement of the law as the trial court quoted the exact language provided in PIK Crim. 4th 52.020, which is based on K.S.A. 2014 Supp. 21-5202(c). Second, the State charged Jordan with two counts of aggravated battery and one count of aggravated assault. Again, a defendant must "knowingly" commit an aggravated battery or an aggravated assault. Thus, the PIK Crim. 4th 52.020 instruction was legally appropriate because the culpable mental state associated with aggravated battery and aggravated assault is "knowingly" and the instruction explained to the jury that the State could prove a defendant "knowingly" committed a crime if the State proved that a defendant "intentionally" committed a crime.

Furthermore, the instruction was factually appropriate given the evidence the State presented at Jordan's trial. The notes on PIK Crim. 4th 52.020 state that the "instruction should be given if the State has proved a higher culpable mental state than required by a particular offense." At trial, the State provided ample evidence that Jordan and his co-defendants not only "knowingly" committed these crimes but "intentionally" committed these crimes. For instance, Brian testified that, in reference to either Brice or Jeffery, Jordan said that that he "was going to fuck him up when [he] saw him." Eric testified that Jordan had called the house before breaking in and said he was coming to kill Jeffery. Jeffery, Michelle, Alecia, and Eric all testified that after breaking into the house, Joseph stabbed Jeffery while Jordan hit Jeffery. Alecia testified that Desmond pointed a gun at

9

her while telling her to "shut the F up." Moreover, Michelle testified that Joseph attempted to stab her, slicing open her sweatpants, as he ran out of the house. Accordingly, the PIK Crim. 4th 52.020 instruction was factually appropriate because it informed the jury that it could find Jordan guilty of the aggravated batteries and the aggravated assault based on the State's evidence showing Jordan and the other co-defendants intentionally committed the aggravated batteries and the aggravated assault.

Thus, the PIK Crim. 4th 52.020 instruction was not clearly erroneous because the instruction was both legally and factually appropriate. As a result, Jordan has failed to meet the first step of the two-step analysis in determining whether a challenged instruction is clearly erroneous.

Consequently, we affirm Jordan's convictions.

Affirmed.