NOT DESIGNATED FOR PUBLICATION

No. 121,429

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRAIG JOSEPH SPEAKE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Phillips District Court; PRESTON PRATT, judge. Opinion filed August 14, 2020. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Kurtis Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., MCANANY, S.J., and BURGESS, S.J.

PER CURIAM: The events which led to Craig Speake being convicted of aggravated battery occurred on the evening of May 20, 2018, at Speake's house.

FACTUAL AND PROCEDURAL HISTORY

Thomas Stacey, who had been drinking that evening, was intoxicated and belligerent. He refused to leave Speake's house when Speake repeatedly told him to leave. Speake reported to the authorities that there was an unwanted person at his residence.

1

Deputies Kendall and Davis of the Phillips County Sheriff's Office responded. When Davis arrived at Speake's home, Speake was standing on the front porch. Stacey was lying on the concrete walkway that leads from the house to the sidewalk. He was moaning and mumbling and unable to answer any questions. Stacey had a small laceration and blood above his left eye. Due to a strong odor of alcohol, Davis believed Stacey was highly intoxicated, and that was why Stacey was not able to respond. Davis did not believe that Stacey could have walked, crawled, or rolled himself off the porch in his condition.

Speake told Davis that while Stacey was inside the residence, Stacey "[p]oked him in the chest and came at him in an aggressive, angry manner." Speake responded by punching Stacey in an effort to get him out of the house. According to Speake, Stacey then fell out onto the porch. Speake had told Deputy Kendall that he dragged Stacey down the porch stairs by Stacey's beard and his arm and put him on the concrete walkway that leads to the sidewalk. (Speake is 6 feet, 2 inches tall, and weighs 225 pounds. Stacey is 5 feet, 9 inches tall, and weighs 140 pounds.) But it appeared to Davis that Stacey had been dragged down the stairs by his feet:

> "Q.     So again you said [Stacey's] head was where?
>  "A.     Would have been pretty close to those red steps, and then his feet were directly in line with the sidewalk further away from those steps.
>  . . . .
>  "Q.     Did it strike you as odd that his head would be closest to the door then, as opposed to his feet?
>  "A.     It did. It appeared he had been drug down the stairs by his feet. . . . [I]t appeared he had been drug down by his feet causing his head to go down the stairs one at a time."

Trial Exhibit 12 is a photo of the front steps to Speake's house. It shows three shallow steps that lead from the porch to the concrete walkway that leads to the sidewalk.

2

Kristen Pounds, an EMT with Phillips County EMS, arrived and assessed that Stacey had a head injury. At that point Stacey was nonverbal and only able to move the right side of his body. Stacey was transported by ambulance to the Phillips County Hospital.

At the Phillips County Hospital, Dr. Jeff McKinley observed that Stacey had trouble breathing and could only move the right side of his body. Stacey was intubated and a CT scan of Stacey's skull revealed a "large subdural bleed, or basically bleeding in between the brain and the skull." At 3.1 centimeters, it was the largest subdural hematoma that Dr. McKinley had ever seen. Dr. McKinley contacted the on-call neurosurgeon at a hospital in Kearney, Nebraska, and arranged to have Stacey transported to Kearney for treatment.

EMT Pounds drove the ambulance from the Phillips County Hospital to meet Kearney's air care ground team in Holdrege. She was accompanied by an advanced life support team, which included two paramedics.

Pete Rogers, the director of the Phillips County EMS, was one of the paramedics in the ambulance. Rogers often assisted his staff when a critical patient needed to be transferred. He was called in to assist with the transport due to Stacey's condition. Rogers reported that Stacey "was exhibiting signs and symptoms of intercranial swelling, pressure on the brain," which is generally due to a head injury.

The paramedics intubated Stacey and gave him medication to remove fluid from the space around Stacey's brain. Stacey's breathing was being controlled by artificial ventilation, but his vital signs were trending negatively because his blood pressure was increasing while his pulse was decreasing. The paramedics were concerned that Stacey

might die while being transported so they prepared the defibrillation pads, though they ultimately did not have to use them.

Dr. McKinley later contacted law enforcement to discuss the extent of Stacey's injury, and informed Deputy Davis that he may be working a homicide, as he was unsure whether Stacey would survive his injuries.

A search warrant was obtained for Speake's residence. Upon executing the warrant the officers saw no evidence of a struggle in the house but did find rolling papers, Percocet, Xanax, morphine, and marijuana.

Speake was arrested. After being advised of his *Miranda* rights, Speake told Phillips County Sheriff's Deputy Kyle Pinkerton that Stacey started acting belligerently. Stacey poked him twice in the chest. Speake responded by punching Stacey "'pretty hard'" once or twice in the head. It appeared that Stacey lost consciousness at that point, so Speake pulled Stacey down the stairs and threw him in the yard after he got Stacey out the front door. Stacey said he acted in self-defense and in defense of his home. But Pinkerton saw no evidence that Stacey had attacked him, and Speake made no claim that Stacey did.

The State charged Speake with aggravated battery, possession of a controlled substance, possession of a depressant, possession of a hallucinogenic drug, and possession of drug paraphernalia.

At trial, Dr. McKinley testified that Stacey's injuries and his subdural hematoma were caused by blunt force trauma. He was unable to say whether a punch to the head or Stacey hitting his head on something while being dragged from the house caused the injury. But he stated: "It's quite a severe injury, so I think you would have to fall at a certain height or something pretty severe to do this in any individual. You would see a

4

smaller injury from a simple fall." According to McKinley, though Stacey survived he has a traumatic brain injury with "dysarthric speech, he has facial droop on the left, has difficulty speaking clearly, and it's most likely from damage to the nerves that control the tongue and the face." Dr. McKinley said that he was surprised to hear that Stacey had survived his injuries.

Dr. McKinley's testimony was consistent with the observations of Sheriff Charles Radabaugh who had recently visited Stacey at a rehabilitation hospital. Radabaugh testified that Stacey's speech was substantially impaired and Stacey could not walk without the aid of a gate belt and two aides to support him.

The defense called William Slape. Speake did not testify on his own behalf. Slape testified that he was at Speake's home on the night of this incident for about 30 or 40 minutes. He left when Speake asked him to leave. He said Stacey was "very intoxicated [and] very belligerent in the way he talked." Stacey refused to leave when Speake asked him. The intoxicated Stacey was stumbling into furniture as he walked, but Slape never saw Stacey fall to the floor or hit his head on anything. He did not observe any fight that evening while he was there.

The jury convicted Speake of aggravated battery and possession of a depressant for the Xanax, but it acquitted him of the other charges. The district court sentenced Speake to 64 months' imprisonment for aggravated battery and a concurrent 12-month sentence for the possession of a depressant.

ANALYSIS

*Jury Instruction Issue*

Speake appeals his aggravated battery conviction. He first contends that the district court erred when it refused to include a simple battery jury instruction. The steps for analyzing this issue are well known to the parties and are stated in *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). We need not repeat all of them here. It suffices to say that resolution of this issue turns on whether an instruction on simple battery, though legally appropriate as a lesser included crime of aggravated battery, was factually appropriate here.

Speake argues the district court erred because it had the duty to instruct the jury on lesser included crimes "where there is some evidence which would reasonably justify a conviction" on the lesser included crime. K.S.A. 2019 Supp. 22-3414(3). Speake contends that there was some evidence—the possibility that the injuries to the intoxicated Stacey were caused by a fall—that would justify a conviction of simple battery when considering the evidence in the light favoring him. See *McLinn*, 307 Kan. at 324-25. He argues that this is so even if the evidence is weak or inconclusive because it is up to the jury to decide whether the evidence establishes harm or great bodily harm. See *State v. Simmons*, 295 Kan. 171, 177, 283 P.3d 212 (2012); *State v. Boyd*, 281 Kan. 70, 93, 127 P.3d 998 (2006).

In *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017), our Supreme Court defined great bodily harm as "'more than slight, trivial, minor, or moderate harm [that] does not include mere bruising, which is likely to be sustained by simple battery.'"

In *State v. Brice*, 276 Kan. 758, 80 P.3d 1113 (2003), the defendant shot his victim with a 9 mm handgun from a distance of about two feet. The bullet entered the victim's

upper right thigh and exited through this right buttock. The bullet "missed bone, major arteries, veins, and nerves." 276 Kan. at 760. The victim stayed overnight at a hospital and was released. He limped for about a week but did not use crutches. He missed a week of work and wound up with a scar at the bullet's entry and exit points.

Brice was charged with severity level 4 aggravated battery: that he intentionally caused great bodily harm to the victim. The court instructed the jury on intentionally or recklessly causing great bodily harm but refused to instruct on the lesser bodily harm. Following Brice's conviction, the Court of Appeals determined that the district court's instruction to the jury that a "through and through" bullet wound as a matter of law constituted great bodily harm was improper and violated the defendant's right to have each element of the charge proven to the jury beyond a reasonable doubt. 276 Kan. at 768.

On review, the Supreme Court declared that a through and through bullet wound is not great bodily harm as a matter of law. But the court further stated:

"Whether there is evidence in the case to support the giving of a lesser included instruction is a determination to be made by the trial court. If there is evidence that the harm was slight, trivial, moderate, or minor, then the trial court must give a lesser included instruction. Thus, a trial court could determine that a bullet wound, even one that missed bone, major arteries, veins, and nerves, is not slight, trivial, moderate, or minor and will not support a lesser included instruction for battery.

"There was no error in the trial court refusing to instruct on the lesser included offenses of the charged offense, *i.e.*, charges of intentionally or recklessly causing bodily harm. . . . Here, the evidence does not support the trial court giving a lesser included instruction for battery." 276 Kan. at 774.

7

We need not recount the horrible immediate and lasting consequences Stacey suffered in this incident. If the injuries the victim sustained in *Brice* did not warrant a lesser included instruction, *a fortiori* no such instruction was warranted here.

But Speake argues that while he admittedly hit Stacey a couple of times, he contends Stacey's injuries "occurred elsewhere." He contends that the evidence shows that intoxication leads to a loss of balance and Stacey's injuries "could have resulted from a severe fall."

In *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015), the defendant was ejected from a bar. Once outside the bar, the defendant punched another patron who fell backwards and hit his head on a nearby car bumper, causing the victim to suffer a basilar skull fracture. As explained by our Supreme Court,

> "'knowingly,' as used in K.S.A. 2011 Supp. 21-5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action." 301 Kan. at 211.

Thus, Speake did not have to intend the precise harm that Stacey suffered. Rather, Speake must have acted with knowledge that some type of great bodily harm to Stacey was reasonably certain to result from twice striking Stacey "'pretty hard'" on the head, knocking him out, and then dragging him out of the house and down the stairs to the walkway.

Given this evidence, no reasonable juror would have found that Speake did not know that the injury to Stacey from these actions was reasonably certain to be "'more than slight, trivial, minor, or moderate harm [which] does not include mere bruising.'"

8

*Robinson*, 306 Kan. at 1027. The district court did not err in rejecting Speake's proffered instruction on simple battery.

*Apprendi Issue*

Speake contends that the district court violated his Sixth and Fourteenth Amendment rights under the United States Constitution as determined in *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it increased his sentence based on his prior convictions. He claims the district court erred in not submitting his criminal history to the jury for it to determine beyond a reasonable doubt.

This frequently raised issue has long been resolved in Kansas contrary to Speake's position. See *State v. Ivory*, 273 Kan. 44, 45-47, 41 P.3d 781 (2002). We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We see no such indication. The district court did not err in sentencing Speake.

Affirmed.