No. 123,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LELAND L. JACKSON III,
*Appellant*.

SYLLABUS BY THE COURT

1.

The commercial sexual exploitation of a child statute under K.S.A. 2018 Supp. 21-6422(a)(1) requires proof of knowing conduct. PIK Crim. 4th 64.091 (2017 Supp.) erroneously omits the required culpable mental state. The omission is subject to a harmless error analysis.

2.

Selecting a foreperson is not a part of jury deliberations, and the participation of an alternate juror in said selection is not presumptively prejudicial requiring the reversal of a conviction.

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed October 15, 2021. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER, J., and WALKER, S.J.

ARNOLD-BURGER, C.J.: Leland L. Jackson III appeals his convictions for aggravated indecent liberties with a child, commercial sexual exploitation of a child, and indecent liberties with a child. Jackson raises several claims of trial error, including: (1) The trial court failed to instruct the jury his actions needed to be done knowingly to support the commercial sexual exploitation of a child charge; (2) the jury was tainted when the alternate juror was allowed to participate in selecting the foreperson; (3) the prosecutor made improper statements on jury nullification during closing arguments; and (4) the cumulative effect of these errors violated Jackson's constitutional right to a fair trial. Finding no error, we affirm Jackson's convictions.

FACTUAL AND PROCEDURAL HISTORY

On an afternoon in May 2019, I.W., M.C., and K.H. were all walking to M.C.'s house after purchasing snacks from a QuikTrip in Wichita, Kansas. I.W. and M.C. were both 15 years old at the time, and K.H. was 16 years old. A man—later identified as Jackson—pulled up next to them in his car and asked if they knew where to get any marijuana. The girls got into Jackson's vehicle and accompanied him to a liquor store, then a smoke shop, and ultimately a hotel room. While the three girls were in the hotel room with Jackson, he had M.C. help him obtain an erection and then he had sex with I.W. in exchange for money.

During later interviews with police officers, I.W. and M.C. at first denied having any sexual contact with Jackson. M.C. eventually disclosed that she gave Jackson a "hand job" in exchange for $20, and I.W. admitted that Jackson offered her money in exchange for sex. A detective also interviewed Jackson, who admitted to paying I.W. and M.C. for sexual contact.

The State brought several charges against Jackson. As to I.W., the State charged Jackson with aggravated indecent liberties with a child and commercial sexual

2

exploitation of a child. As to M.C., the State charged him with one count of indecent liberties with a child and one count of commercial sexual exploitation of a child.

The case proceeded to trial with Jackson representing himself. M.C., K.H., and I.W. testified on the State's behalf, offering identical versions of what had occurred.

All three girls testified they were walking back from QuikTrip when Jackson approached them in his vehicle. He asked if they knew where he could purchase marijuana, then showed them a bottle of alcohol and they got into his vehicle. While in the car, Jackson discussed having sex with the girls in exchange for money and they all eventually ended up in a hotel room. Once there, the girls began smoking marijuana and drinking and at some point, Jackson took his clothes off. M.C. testified that she received $20 from Jackson after she used her hand and "made him hard." After that, Jackson and I.W. had sex on the bed while M.C. and K.H. sat by the bathroom. The girls agreed Jackson gave I.W. money at some point, but the amount was unclear. K.H. believed it was "like hundreds," while I.W. testified she received either $60 or $100 and that M.C. received $40.

Jackson also testified on his own behalf at trial. On the stand, he admitted repeatedly to having sex with I.W. and paying her. As for M.C., however, Jackson said he did not pay her any money for sexual contact, but that M.C. initiated oral sex "on her own." Jackson also believed the girls were stealing from him, in particular because he saw I.W. taking money from the visor of his car but he "didn't fight that because [he] assumed that the deal was on anyway." He also claimed that all three girls stated they were 18 years old while at the hotel, which he believed because "[t]hey were all grown[,] talking grown, acting grown." Jackson said that I.W. on "that day passed as 25 years old, easy," so he "was shocked that [I.W.] said she was 18 because [he] picked the safe person, [he] thought, to have sex with."

3

During closing arguments, Jackson directed the jury's attention to Instruction No. 8—the elements of Count 1—which provided in part: "The State need not prove the defendant knew the child's age." Jackson explained:

> "[The prosecutor] said that that law was there to prevent people from committing that crime and I disagree. That law is there to prevent people from having the defense who may have gotten into a situation like I did. That law is there to say, hey, no matter what you say, this is what the law says. You have to follow the law. That's what that law is there for. And fortunately, there is a lot of people who have made the same mistake that I made that are in this very county jail."

The trial court sustained the State's objection to that statement as being irrelevant and improper. Jackson then closed by stating, "I just want you all to keep that in mind when you are deliberating. Thank you." The prosecutor responded with the following:

> "I just ask you to keep in mind the story of woe is not a defense. What he's essentially asking you to do is just to ignore the law because—well, because he wants you to. You took an oath to uphold the law and I'm asking you to do that."

After closing arguments, the trial court sent the jurors back to the jury room and instructed them to begin deliberations by selecting the presiding juror. After a brief recess, the court went back on the record and noted from the bench that it had inadvertently neglected to identify the alternate juror. The court advised the alternate juror he would not participate in deliberations unless one of the original twelve jurors could not participate anymore, and he would be separated from the others in the library during deliberations. The following exchange then occurred:

> "[THE COURT:] Record should reflect that it was a matter of a minute or so from the time that you went back into the jury deliberation room with the other jurors and you did not participate in any deliberations back there; correct, sir?
> "FOREPERSON: We had just elected the foreman.

4

"THE COURT: Okay. Thank you. If you'll have a seat back there. If nothing further, we'll stand in recess."

After deliberating, the jury found Jackson guilty on Counts 1, 2, and 3, and not guilty on Count 4 (commercial exploitation of M.C.). Jackson was ultimately sentenced to a total sentence of 324 months in prison and ordered lifetime postrelease supervision.

Jackson timely appealed.

ANALYSIS

I.  THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE CULPABLE MENTAL STATE REQUIRED FOR COMMERCIAL SEXUAL EXPLOITATION OF A CHILD.

At the conclusion of the evidence, the court instructed the jury:

"The defendant is charged with commercial sexual exploitation of a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.     The defendant hired [I.W.] by giving, offering, or agreeing to give, anything of value to any person.

"2.     The defendant hired [I.W.] to engage in sexual intercourse.

"3.     At the time of the act, [I.W.] was less than 18 years old. The State need not prove the defendant knew the child's age.

"4.     This act occurred on or between the 3rd day of May, 2019, and
        the 4th day of May, 2019, in Sedgwick County, Kansas."

As both parties note, the instruction plainly omits the culpable mental state required for the offense. K.S.A. 2018 Supp. 21-5202(a) ("Except as otherwise provided, a culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'"). The district court must instruct on the culpable mental state necessary for a conviction of a charged offense unless the statutory definition "plainly dispenses with any mental element." K.S.A. 2018 Supp. 21-5202(d).

That said, the instruction given mirrors the recommended pattern instruction for a commercial sexual exploitation of a child charge under K.S.A. 2018 Supp. 21-6422(a)(1). See PIK Crim. 4th 64.091 (2017 Supp.). But that does not require this court to approve the jury instruction despite the omission. Although the Kansas Supreme Court "'strongly recommend[s]'" the use of PIK instructions, it has also recognized that a trial court should not hesitate to modify or add to pattern instructions where "'the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK.'" *State v. Bernhardt*, 304 Kan. 460, 470, 372 P.3d 1161 (2016). The commercial sexual exploitation of a child statute requires proof of knowing conduct. PIK Crim. 4th 64.091 (2017 Supp.) erroneously omits the required culpable mental state. The omission is subject to a harmless error analysis.

Jackson argues that this omission constitutes reversible error. He contends the omission of this essential element of the offense deprived the jury of the opportunity to find him guilty beyond a reasonable doubt, thus amounting to structural error and requiring reversal of his conviction on Count 2.

6

Because Jackson admittedly did not object to the jury instruction at or before trial, and there is no dispute that Jackson's proposed instruction on appeal is both legally and factually appropriate, this court applies what is known as the clear error standard to determine if the instructional error merits reversal. Under that standard, we do not reverse the conviction unless we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018); see K.S.A. 2020 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."); see also *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) ("[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."); *State v. Daniels*, 278 Kan. 53, 62, 91 P.3d 1147 (2004) (adopting test from *Neder* and holding that omission of bodily harm element from aggravated robbery instruction was harmless where bodily harm was uncontested and supported by overwhelming evidence). Jackson bears the burden as the party claiming error to demonstrate the necessary prejudice. 307 Kan. at 318.

Despite acknowledging that Kansas appellate courts have "repeatedly" applied the harmless error standard to review similar challenges, Jackson urges this court to review his claim for structural error. An appellate court's consideration of whether an error is structural or whether it may instead be declared harmless is a question of law over which appellate courts have unlimited review. *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017).

"Structural errors 'are so intrinsically harmful as to require automatic reversal (*i.e.*, "affect substantial rights") without regard to their effect on the outcome.' *Neder*[, 527

U.S. at 7]." *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 160 P.3d 794 (2007). "A structural error is one that is so pervasive it defies 'analysis by "harmless-error" standards.'" *State v. Johnson*, 310 Kan. 909, 913, 453 P.3d 281 (2019) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]). To date, the United States Supreme Court has only identified a "'very limited class of cases'" involving structural errors, including: (1) total deprivation of counsel; (2) lack of an impartial trial judge; (3) denial of the right to self-representation at trial; (4) violation of the right to a public trial; (5) erroneous reasonable-doubt instruction; and (6) unlawful exclusion of members of the defendant's race from a grand jury. *Neder*, 527 U.S. at 8; see *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010); *Fulminante*, 499 U.S. at 309-10; see also *Johnson*, 310 Kan. at 917 (declining to find structural error where judge briefly fell asleep during a criminal jury trial).

Jackson contends omitting the mental state element from the instruction deprived the jury of the opportunity to find him guilty beyond a reasonable doubt on Count 2, thus violating his constitutional right to a jury trial and amounting to structural error. He also asserts that this court cannot "step in and make the factual finding to save this conviction" because "it is the jury's role to find each and every element in order to convict." As support, he relies heavily on *State v. Brice*, 276 Kan. 758, 80 P.3d 1113 (2003), and other authorities cited within that decision. But *Brice* is distinguishable because it involved a specific objection to the disputed instruction, in particular the trial judge's instruction to the jury that "great bodily harm" means "a through and through bullet wound." 276 Kan. 771. On appeal the Kansas Supreme Court held that instructing the jury in this way infringed on the defendant's constitutional rights because the instruction "in effect directed a verdict on an essential element of the aggravated battery charge." 276 Kan. at 771.

This case is more like *Neder* and *Daniels* because it involves the omission of an essential element of a charged offense. But more to the point, Jackson points to no authority recognizing that a claim like his presents a structural error. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). And the Kansas Supreme Court has repeatedly analyzed the omission of an essential element of an offense using the harmless error standard, directly contradicting any assertion that the error is so pervasive as to defy "'analysis by 'harmless-error' standards.'" *Johnson*, 310 Kan. at 913; see also *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (Kansas Court of Appeals duty bound to follow Kansas Supreme Court precedent absent some indication of a departure from previous position). As a result, we decline to review Jackson's claim for structural error and instead use the harmless-error standard.

So returning to whether the instructional error was harmless, the evidence supporting Jackson's guilt on Count 2 (commercial exploitation of a child—I.W.) was uncontested and overwhelming. Jackson admitted on the stand repeatedly that he paid I.W. to have sex with him, and his testimony was corroborated by the girls' testimony that he gave I.W. money after they had sex. Jackson's own admission establishes that he was aware of the nature of his conduct. See K.S.A. 2018 Supp. 21-5202(i) (defining "'knowingly'"). Moreover, Jackson does not challenge his conviction in Count 1 for aggravated indecent liberties with a child, which is the underlying sexual act supporting his conviction on Count 2, and that charge required proof that he acted "knowingly, intentionally, or recklessly." K.S.A. 2018 Supp. 21-5202; K.S.A. 2018 Supp. 21-5506(b)(1), (c)(2)(A). We have no hesitation in concluding beyond a reasonable doubt that the verdict would not have changed had the instruction contained the requirement that Jackson acted knowingly, making that error harmless. Accordingly, Jackson's conviction for commercial sexual exploitation of a child is affirmed.

II.    JACKSON WAS NOT PREJUDICED BY THE ALTERNATE JUROR'S PRESENCE WHEN THE JURY SELECTED THE FOREPERSON.

Jackson next argues—for the first time on appeal— that he is entitled to a new trial because the district court inadvertently allowed the alternate juror to participate in selecting the foreperson of the jury. He contends the alternate juror's participation violated both his constitutional right and his statutory right to a jury trial under K.S.A. 2020 Supp. 22-3420(a), warranting a mistrial. Resolution of this issue presents a question of law subject to unlimited review because it involves determining whether Jackson's constitutional rights were violated. See *State v Anderson*, 294 Kan. 450, 464, 276 P.3d 200 (2012).

### A. *We elect to consider Jackson's constitutional claim.*

Generally, Kansas courts do not consider constitutional issues raised for the first time on appeal. There are exceptions to this rule, which include: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). "But just because an exception may permit review of an unpreserved issue, this alone does not obligate an appellate court to exercise its discretion and review the issue." *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017). "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so." *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020).

Jackson contends this court can consider his claim under two recognized exceptions to the general rule that issues not raised below, including constitutional

10

grounds for reversal, cannot be raised on appeal for the first time. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). He asserts consideration of this issue is necessary to serve the ends of justice or prevent denial of his fundamental right to a jury trial, and that it presents only a question of law on proven or admitted facts that is finally determinative of the case. See *Johnson*, 309 Kan. at 995 (recognizing these as exceptions).

Jackson is asserting, at a minimum, that the alternate juror's mere *presence* in the jury room violated his constitutional right to a jury trial and prejudiced him, an issue this court has reviewed for the first time on appeal in the past. See *State v. Thurman*, No. 97,450, 2008 WL 2891064, at *7 (Kan. App. 2008) (unpublished opinion) (finding no reversible error when alternate jurors present during jury deliberations). We elect to consider Jackson's claim.

### B. *Our standard of review is unlimited.*

Because resolution of this issue involves determining whether Jackson's constitutional rights were violated, our review is unlimited. See *Anderson*, 294 Kan. at 464. Likewise, the interpretation of a statute presents a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). And finally, the party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court presumes the action of the district court was proper. *State v. Simmons*, 307 Kan. 38, 43, 405 P.3d 1190 (2017).

*C. The only Kansas appellate case to examine a similar issue was an unpublished case from this court in 2008.*

This court has addressed a similar—but not identical—issue once in *Thurman*, 2008 WL 2891064. In that case, the trial judge allowed two alternate jurors to be present in the jury room but instructed them not to participate in the jury deliberations. On appeal, the panel concluded the defendant showed no prejudice but noted "the better practice would be to exclude [the alternate jurors]." 2008 WL 2891064, at *7. The panel also found it significant that the defense counsel "actively participated in the discussion related to the alternate jurors and ultimately agreed to the trial court's suggestion that they be present in the jury room." 2008 WL 2891064, at *7. That said, other than *Thurman*, no Kansas appellate decision has considered an alternate juror's presence in the jury room or participation during the selection of the foreperson.

*D. The statutory and constitutional provisions regarding alternate jurors is examined.*

The Sixth and Fourteenth Amendments to the United States Constitution—as well as section 5 to the Kansas Constitution Bill of Rights—guarantee a criminal defendant the fundamental right to a jury trial. *State v. Redick*, 307 Kan. 797, 803, 414 P.3d 1207 (2018). In Kansas, K.S.A. 2018 Supp. 22-3412(c) authorizes a trial court to empanel alternate jurors to replace a chosen juror, requiring:

"Such alternate jurors shall be seated near the other jurors, with equal power and facilities for seeing and hearing the proceedings in the case, and they must attend at all times upon the trial of the cause in company with the other jurors. They shall obey the orders of and be bound by the admonition of the court upon each adjournment, but if the regular jurors are ordered to be kept in custody during the trial of the cause, such alternate jurors also shall be kept in confinement with the other jurors. Upon final submission of the case to

12

the jury, the alternate jurors may be discharged or they may be retained separately and not discharged until the final decision of the jury."

Moreover, "[n]o person other than members of the jury shall be present in the jury room during deliberations." K.S.A. 2018 Supp. 22-3420(a).

### E. Federal and state caselaw regarding alternate jurors is examined.

Almost 20 years ago, the United States Supreme Court addressed whether an alternate juror's presence in the jury room during deliberations violated the defendant's substantial rights using the "plain error" rule set forth in the Federal Rules of Criminal Procedure. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Although the Supreme Court explicitly noted it was not reviewing the issue as a Sixth Amendment or Due Process Clause violation, it held that resolution turned on whether the trial court's error prejudiced the defendants and concluded the mere presence of alternate jurors during jury deliberations is not inherently prejudicial. See 507 U.S. at 739-41. In reaching this conclusion, the *Olano* Court noted that in some cases "[i]n theory, the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: either because alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors." 507 U.S. at 739.

Relying on this language, Jackson contends the *Olano* decision implicitly recognized that an alternate juror's *participation* in jury deliberations leads to a presumption of prejudice that requires reversal of his convictions. As support, he relies on several state and federal court decisions holding that a defendant can establish prejudice merely by showing that an alternate juror participated in deliberations. For example, in *Barnes v. Joyner*, 751 F.3d 229, 246 (4th Cir. 2014), the Fourth Circuit recognized that a rebuttable presumption of prejudice applied when the facts showed a

13

juror communicated with her pastor about the death penalty while serving on a capital sentencing jury. See also *Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 98 L. Ed. 654 (1954) (recognizing rebuttable presumption of prejudice upon showing extraneous influence on the jury); *United States v. Acevedo*, 141 F.3d 1421, 1424 (11th Cir. 1998) (assuming based on *Olano* that alternate jurors' participation in jury deliberations, including electing alternate as foreperson, was a "prejudicial influence" but ultimately concluding trial court cured the prejudice by dismissing alternates and issuing clean-slate instruction). Likewise, in *Manning v. Huffman*, 269 F.3d 720, 726 (6th Cir. 2001), the Sixth Circuit concluded that "evidence that an alternate juror participated in jury deliberations is sufficient to demonstrate prejudice." See also *Stokes v. State*, 379 Md. 618, 642, 843 A.2d 64 (2004) ("The presence of alternate jurors during deliberations creates a presumption of prejudice that is effectively unrebuttable under most circumstances.").

These cases are clearly distinguishable because they involved evidence that external information directly influenced the jury's verdict. In contrast, the facts here involved an alternate juror's participation in selecting the foreperson, which—as the parties both point out—is generally not considered part of the deliberation process. See *State v. West*, 274 Conn. 605, 651, 877 A.2d 787 (2005) (applying *Olano* and requiring a showing of prejudice because selecting a foreperson is not part of deliberations); *Bouey v. State*, 762 So. 2d 537, 540-41 (Fla. Dist. Ct. App. 2000) (harmless error analysis is appropriate if the alternate juror is present only during the time the jury engages in organizational activity such as taking breaks, making phone calls, or electing the foreperson); *Jacksonville Racing Ass'n, Inc. v. Harrison*, 530 So. 2d 1001, 1004 (Fla. Dist. Ct. App. 1988) (rejecting new trial argument because the evidence revealed "no reasonable possibility that the alternate participated in any substantive deliberations").

We fully recognize that making an adequate inquiry into any prejudice suffered when an alternate juror is allowed to retire to the jury room is difficult because the

14

inquiry involves an intrusion into the proceedings of the jury. But here no such intrusion is required. The undisputed evidence in the record is that the alternate juror was in the room for a couple of minutes and the only action that took place was selection of a foreperson. Jackson does not claim that the alternate juror participated in deliberations. We agree with our sister states who have directly considered this issue. Selecting a foreperson is not a part of jury deliberations, and the participation of an alternate juror in said selection is not presumptively prejudicial requiring the reversal of a conviction. And there is no evidence to support a finding here that Jackson was prejudiced by this brief interaction. The only case Jackson cites to the contrary, *United States v. Beasley*, 464 F.2d 468, 471 (10th Cir. 1972), was decided well before *Olano* and abrogated by it. Accordingly, we find that the alternate juror's participation in the selection of a jury foreperson does not warrant reversal of Jackson's convictions.

III.    THE PROSECUTOR'S STATEMENTS IN CLOSING WERE NOT IMPROPER, AND EVEN IF THEY WERE, THEY WERE HARMLESS.

Toward the end of his closing statement, Jackson, referring to one of the aggravated indecent liberties with a child charges, argued as follows:

> "[THE DEFENDANT:]  Mr. Edwards said that the number three—at that time of intercourse, [I.W.]—I'm just reading this in particular one—was 14 or 15 years old. The State need not prove the defendant knew the child's age. And he said that that law was there to prevent people from committing that crime and I disagree. That law is there to prevent people from having the defense who may have gotten into a situation like I did. That law is there to say, hey, no matter what you say, this is what the law says. You have to follow the law. That's what that law is there for. And fortunately, there is a lot of people who have made the same mistake that I made that are in this very county jail.
>
> "MR. EDWARDS:  I object to that. That's irrelevant and improper.

15

"THE COURT: Sustained. Please disregard that statement. We're here to talk about you, Mr. Jackson.

"THE DEFENDANT: Yes. I just want you all to keep that in mind when you are deliberating. Thank you.

"THE COURT: Counsel.

"MR. EDWARDS: I just ask you to keep in mind the story of woe is not a defense. What he's essentially asking you to do is just to ignore the law because—well, because he wants you to. You took an oath to uphold the law and I'm asking you to do that."

Jackson argues the State's statement requires reversal for prosecutorial error for misstating the law on jury nullification. The State responds that jury nullification is not a valid defense, and that any error would be harmless because Jackson cannot show the jury would have acquitted him on the charges, particularly since he admitted to the offenses.

To determine whether prosecutorial error has occurred, we first look to whether the prosecutor's comments fall outside the wide latitude afforded prosecutors. If they do, we next determine whether the error prejudiced the defendant's constitutional due process rights to a fair trial. Prosecutorial error is harmless if the State can demonstrate beyond a reasonable doubt that the error did not affect the outcome of the trial considering the entire record. In other words, it is harmless if there is no reasonable possibility that the error contributed to the verdict. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

16

*A. The prosecutor's statement was not a misstatement of the law.*

It is considered prosecutorial error if the prosecutor misstates the law. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). We evaluate prosecutorial error using a two-step analysis. We ask: (1) whether the complained-of conduct was outside the considerable latitude given a prosecutor in discussing the evidence; and (2) whether the remarks constitute plain error, that is, whether the statements prejudiced the defendant and denied him or her a fair trial. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

Jackson contends the prosecutor misstated the law during closing arguments by advising the jury that "the story of woe is not a defense" and reminding them of their oath to uphold the law. According to Jackson, these comments were improper because they eliminated "what amounted to his only defense," which is that the jury could have acquitted him using its power of nullification.

As support, Jackson relies on several decisions discussing a jury's nullification power. See *State v. McClanahan*, 212 Kan. 208, 213, 510 P.2d 153 (1973) (referring to "the jury's raw physical power to disregard the law"). But as he recognizes, the Kansas Supreme Court has long held that an instruction telling the jury it may nullify is legally erroneous. 212 Kan. at 215-17; see also *State v. Naputi*, 293 Kan. 55, 66, 260 P.3d 86 (2011) ("It is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be."). Although Jackson does not go as far as to suggest he has a "right" to jury nullification, the Kansas Supreme Court recently declined to recognize such a right. *State v. Boothby*, 310 Kan. 619, 631, 448 P.3d 416 (2019) (noting that past decisions called the jury nullification a "'power'" and not a "'right'"). In a companion decision issued the same day as *Boothby*, the court also held an instruction stating the "'verdict must be founded entirely upon the evidence admitted and the law as given in

17

these instructions,'" is legally correct. *State v. Toothman*, 310 Kan. 542, 555, 448 P.3d 1039 (2019); *Boothby*, 310 Kan. at 631.

Jackson's argument is aligned with one raised in *State v. Pruitt*, 310 Kan. 952, 967, 453 P.3d 313 (2019). Pruitt claimed prosecutorial error when the prosecutor told the jury it "'must'" convict if convinced beyond a reasonable doubt that the State had proved the elements of the charged offense. After reviewing previous decisions rejecting arguments that a jury should be instructed on the jury nullification power—including *Boothby*—the Supreme Court found no error in the prosecutor's statement. In reaching that conclusion, the court noted that "an instruction from the court is fundamentally different from a prosecutor's closing argument" because the prosecutor merely "used the word 'must' to summarize and emphasize the ways in which the State's evidence proved the elements of the charged crime." 310 Kan. at 967.

A logical extension of these recent holdings would be that the prosecutor's reminder to the jury of their oath to uphold the law does not constitute a misstatement of law. The context of the prosecutor's statements shows they were in direct response to Jackson's suggestion to the jury that it should acquit him because the statute for aggravated indecent liberties with a child prevented him from arguing that he did not know I.W.'s age. Reminding the jury to follow their sworn oath to uphold the law is akin to instructing the jury that the verdict must be based on the evidence presented and the law as instructed. Thus, it cannot reasonably be considered a misstatement of law.

### B. Any error was harmless.

That said, even if we found that the prosecutor's statement to the jury that Jackson could not rely on "woe" as a defense was a misstatement of the law on jury nullification in light of the fact that a "story of woe" was Jackson's only stated defense at trial, his claim still fails. Jackson must demonstrate prejudice. Jackson's testimony admitting that

18

he had sex with I.W., a 15-year-old girl, independently supplied the evidence needed to sustain his conviction for aggravated indecent liberties with a child—I.W. Moreover, as the State points out, the jury acquitted Jackson of commercial sexual exploitation of a child—M.C., which shows that it considered his version of the events in its deliberations since he denied giving M.C. money but admitted to some sexual contact with her.

In sum, we find that the prosecutor's statements do not warrant reversal of Jackson's convictions.

## IV. CUMULATIVE ERROR DOES NOT WARRANT A NEW TRIAL.

In his final argument, Jackson contends the cumulative effect of the above trial errors denied him his constitutional right to a fair trial and warrants reversal of his convictions. The State responds generally that there are no errors to consider under the cumulative error analysis and, alternatively, that Jackson's guilt was established by overwhelming evidence.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and was denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. 310 Kan. at 345-46. However, "'[n]o prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming.'" *State v. James*, 309 Kan. 1280, 1311, 443 P.3d 1063 (2019).

If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Robinson*, 306 Kan. 1012, 1034, 399 P.3d 194 (2017).

The State asserts Jackson's claims of error each "failed on their own merits," and thus cumulative error does not apply. See *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020) (when no errors exist, cumulative error doctrine cannot apply); *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019) (single error cannot support reversal for cumulative error). Contrary to the State's assertion, however, Jackson managed to establish some form of error on two of the three issues raised, but neither of those errors were reversible because they were harmless.

For example, the State conceded on the first issue that instructing the jury on the culpable mental state element for Count 2 (commercial sexual exploitation of a child— I.W.) was legally appropriate but as discussed, that error was harmless because of the overwhelming evidence of Jackson's guilt. Likewise, the alternate juror's brief presence in the jury room for the election of the presiding juror at most created a rebuttable presumption of prejudice. But the record shows that error was also harmless since the alternate juror was promptly removed and did not participate in substantive deliberations. Both errors were harmless as well because of the overwhelming evidence of his guilt, as established by his own testimony.

Although each error was not so egregious to warrant reversal on its own, the cumulative error doctrine seeks to address the collective effect of these errors. According to Jackson, he was denied the right to a fair trial because the instructional error reduced the State's burden of proof while the prosecutor's improper statements about jury nullification simultaneously removed his only available defense. As for his second claim, Jackson also asserts his case "was not tried by an intact jury of twelve," which combined with the other errors to "push" the jury to convict him.

20

But these generalized characterizations of Jackson's claims are not entirely accurate and do not establish that the district court or the prosecutor violated his right to a fair trial. To start, we have found that the prosecutor did not misstate the law on jury nullification, so he cannot rely on that alleged error. In addition, Jackson only directed his jury instruction challenge at Count 2 (commercial sexual exploitation of a child—I.W.), and he was acquitted of the other charge for commercial sexual exploitation of a child—M.C, so he fails to show why that error should be compounded to his other two convictions. See *State v. Sims*, 308 Kan. 1488, 1507, 431 P.3d 288 (2018), *cert. denied* 140 S. Ct. 126 (2019) ("Taken together, these errors in no way compounded one another; they were discrete."). Jackson also fails to explain how the alternate juror's brief presence in the jury room while selecting the presiding juror somehow tainted the jury's substantive deliberations given the instructional error.

The evidence of Jackson's guilt here was overwhelming. By his own admission, Jackson had sexual contact with both I.W. and M.C., who were 15 years old at the time, and he paid I.W. a sum of money in exchange. The girls' testimony corroborated Jackson's admission of guilt. As a result, we find that the cumulative effect of the errors raised did not substantially prejudice Jackson nor deny him a fair trial.

Affirmed.