NOT DESIGNATED FOR PUBLICATION

No. 127,654

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK ANTHONY CARTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Submitted without oral argument. Opinion filed November 14, 2025. Reversed and remanded with directions.

*Reid T. Nelson*, of Capital Appeals and Conflicts Office, for appellant.

*Jarod M. Regier* and *Amber R. Norris*, assistant county attorneys, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: While it has been said that there are no perfect trials, an accused is entitled to a *fair* trial. Fairness is the focus of our review in this direct criminal appeal. Mark Anthony Carter appeals his conviction for theft of some construction equipment from his employer. He claims several trial errors and cumulative error as grounds for reversal. Our review of the record does reveal two errors, so we reverse his conviction for the reasons given below.

1

*Stored construction equipment is reported stolen.*

Carter worked for Tim and Kim Bishop, who owned a small commercial interior construction business. In December 2021, the Bishops reported to law enforcement authorities that construction equipment valued at approximately $200,000 had been stolen. In November 2022, Kim spotted one of their pieces of equipment—a BlastPro Shock Blaster—on an online auction site. In December 2022, law enforcement officers searched Carter's residence but did not find the BlastPro. Carter claimed to be storing construction equipment at his residence for the Bishops. Eventually, Carter admitted to selling the BlastPro and other equipment to recoup storage fees.

A few months later, Kim saw what she believed to be their motorcycle listed for sale on Facebook Marketplace. This time, the officers set up a controlled buy, which led to Carter's arrest. They then searched Carter's property and asked the Bishops to attend the search to help identify any other items of their property. After sifting through items in Carter's garage and trailer, the Bishops found other tools and property that belonged to them.

*Carter is charged and tried.*

The State charged Carter with one count of felony theft, alleging that he unlawfully obtained or exerted unauthorized control over a motorcycle, miscellaneous tools, a BlastPro shock blaster machine, and an electric welder.

At his jury trial, Carter appeared with standby counsel. As framed by the parties, the jurors had to make a choice:  which side were they going to believe. The Bishops said they never permitted Carter to store their property. Carter said he

stored the equipment at the Bishops' request until he had to sell so he could use the space it occupied.

The Bishops testified they never gave Carter permission to take any of their property and had no agreement with Carter for him to store any of their property. Tim remembered that Carter had proposed that he store some items for the Bishops, but Tim did not agree to it.

Carter testified that he stored the equipment at Tim's request. Carter said he was reluctant to do it, but he agreed. He admitted he sold the BlastPro because he believed it had been abandoned. Carter testified it had been stored in his garage for almost a year and that he had not been paid what he was owed from the agreement he and Tim had made. He thought it proper to disperse the property after about a year because it was taking up space he needed.

The jury believed the Bishops and found Carter guilty as charged. He was sentenced to 12 months' probation.

In this appeal, Carter claims the trial court erred by:

(1) giving a non-PIK (nonpattern) instruction on valuation,
(2) denying his request for a preliminary hearing transcript,
(3) making a comment that cast him in a negative light,
(4) responding improperly to a jury question,
(5) excluding video footage of the search of his property, and
(6) cumulative error.

*Was giving the jury a non-pattern instruction reversible error?*

The trial court instructed the jury that to establish the charge of theft, the State must prove Carter intended to deprive the Bishops permanently of property, a 2003 Yamaha z450 motorcycle, miscellaneous tools, a BlastPro Shock Blaster machine, and Lincoln electric welder. And the State must prove the value of the property was at least $1,500.

In addition, the court gave the jury a detailed non-pattern instruction on valuation:

> "The State did not present evidence of value on many of the miscellaneous tools claimed to be involved in the theft charged in Count One. Therefore, you may not consider the value of those items in determining whether the State has met its burden to show that the value of the property claimed to have been taken equals or exceeded a value of $1,500.00. You may only consider the evidence of value presented regarding the Blast Pro Shock Blaster Machine, Colossus Floor Grinder, S36 Hepa Vac, 5600 (Panther) Ride on Floor Scraper, Industrial Electrical Cord, Hubble receptacles, and 2003 Yamaha Motorcycle in making such value determination.
>
> "You may consider the state's claims of miscellaneous tools being taken when considering the State's other claims required to be proven, including the Defendant's intent."

During deliberations, the jury asked, "Within the Instructions on Page 4, No. 2, can we interpret it as and/or, or do we have to consider all items were deprived from the owner." The jury was referring to the element instruction on theft. The trial court responded, "You may consider all, some, or none of the items listed as deprived from the owner to reach your verdict."

4

*The parties stake out opposing views on the effect of this instruction.*

Carter contends this valuation instruction placed undue emphasis on the State's evidence, and diverted the jury from focusing on whether Carter harbored any criminal intent when he took the property from the Bishops' warehouse to instead focusing on the value of the property. He claims the jury's question shows it was confused. The State contends the valuation instruction was a limiting instruction that was to Carter's benefit and that the instruction was legally and factually appropriate.

*We find no jury instruction error here.*

On appeal, we look at all of the instructions given and do not just focus on one. We review to see if the jury was properly instructed on all the law and not misled. See *State v. Hollins*, 320 Kan. 240, 244, 564 P.3d 778 (2025). We have reviewed the jury instructions here and find no cause for concern.

Our Supreme Court strongly recommends using PIK instructions. Those instructions have been developed by knowledgeable committees to bring accuracy, clarity, and uniformity to instructions. *Hollins*, 320 Kan. at 244. But PIK instructions are the starting point when preparing a set of jury instructions, not the end point.

Each trial is unique. Each case offers different facts, different law, different issues. Sometimes the pattern does not fit properly or the patterns are silent on a legal topic. Therefore, caselaw recognizes that a trial court may modify or add clarifications to PIK instructions if the case warrants a change. *Hollins*, 320 Kan. at 244. In turn, when a trial court modifies a PIK instruction or offers additional jury instructions not found in the pattern book, on appellate review, we look to see

5

whether the modification or new instruction properly and fairly stated the law as applied to the facts of the case. See *State v. Bernhardt*, 304 Kan. 460, 472, 372 P.3d 1161 (2016).

This liberty to modify or give new instructions does have a limit. A PIK modification or new instruction must not replace the responsibility of the jury to determine the facts by forcing the jury to give weight to a particular part of the evidence. Simply put, a trial judge may not single out and give undue emphasis to particular evidence, even though the instruction states the correct principle of law. *State v. Cathey*, 241 Kan. 715, 730-31, 741 P.2d 738 (1987), *disapproved on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006).

The *Cathey* court found it was clearly erroneous for the trial judge to instruct the jury that it could consider the defendant's alleged flight to avoid arrest as evidence of guilt because it singled out and particularly emphasized the weight to be given to that evidence by the jury. The weight of all evidence should be left to the jury. 241 Kan. at 730-31; see also *State v. Hillard*, 315 Kan. 732, 772, 511 P.3d 883 (2022), *abrogated on other grounds by State v. Barnes*, 320 Kan. 147, 563 P.3d 1255 (2025).

The reason for avoiding emphasizing some evidence over other evidence to a jury has been refined in a later case. It is not error when the instruction merely provides an accurate statement of the law but does not direct the jury on how to apply certain evidence in assessing the defendant's guilt or innocence. It is error when the instruction directs the jury to a result of guilty. *State v. Appleby*, 289 Kan. 1017, 1063-64, 221 P.3d 525 (2009) (discussing *Cathey*).

We turn to the instruction given here. Unlike the instruction in *Cathey*—which directed the jury that evidence of flight could be considered as evidence of

6

guilt—the valuation instruction did not touch on the weight to be given to certain evidence in assessing guilt or innocence. The valuation instruction placed no more emphasis on the State's evidence than the elements instruction, which was required to be given.

The value of the property was a separate matter from Carter's criminal intent. By Carter's logic, any instruction that did not focus on whether he harbored criminal intent diverted attention away from that issue. But that is not the way jury instructions work. The State had to prove both Carter's criminal intent and that the value of the property taken was at least $1,500. The valuation instruction was a limiting instruction in Carter's favor because the State did not prove the value of a lot of the property discussed at trial.

Finally, the jury's question only shows that it was confused by the use of the word "and" in the list of property in the element instruction. The trial court's response cleared up that confusion.

There are no instruction errors here.

*Is it reversible error to deny Carter a free preliminary hearing transcript?*

During a pretrial hearing, Carter asked for a transcript of his preliminary hearing. The court denied his motion.

Some caselaw gives us a framework for deciding this issue. The State must, as a matter of equal protection, provide indigent defendants with the basic tools of an adequate defense when those tools are available for a price to other defendants. As such, the State must provide an indigent defendant with a transcript of a prior proceeding when that transcript is needed for an effective defense.

7

In making this determination, courts can consider (1) the value of the transcript to the defendant in connection with the trial for which it is sought, and (2) the availability of alternatives that would fulfill the same functions as a transcript. *State v. Kelley*, 209 Kan. 699, 703, 498 P.2d 87 (1972) (holding access to reporter's notes was an acceptable alternative to a transcript) (citing *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 30 L. Ed. 2d 400 [1971]). See also *State v. Hornbeak*, 221 Kan. 397, 401, 559 P.2d 385 (1977).

No doubt a transcript of a prior proceeding at which prosecution witnesses testified can be valuable to the defendant at trial for the impeachment of prosecution witnesses. See *Britt*, 404 U.S. at 228. An audio tape of the hearing is an alternative that satisfies the duty to provide transcripts to indigent defendants. *State v. Brown*, 266 Kan. 563, 572, 973 P.2d 773 (1999).

*The record reveals a timeline of rulings on this point.*

On September 8, 2023, according to its written order, the trial court found Carter was indigent and appointed a public defender to serve as standby counsel.

On September 14, 2023, Carter filed a motion for certain transcripts, noting that the court had previously ruled he was indigent.

On September 29, 2023, at a pretrial conference, the trial court denied Carter's motion for the transcripts. It stated it had no information regarding Carter's indigency. Carter had never submitted a financial affidavit. The court clarified that it did not make an indigency finding when appointing Carter standby counsel. The written order was a boilerplate order that BIDS uses. The court also stated it was curious that Carter did not request the transcripts until two weeks before trial. Carter said that he had previously inquired about getting the

8

transcripts and received an estimate of several hundred dollars per hearing. He told the court he could not afford that and said he could attest to his indigency.

The court offered Carter access to the Zoom recording of the preliminary hearing. He was permitted to view the Zoom recording at the courthouse. Carter stated that would be acceptable. The court stated it would not allow any substitute video to be introduced at trial—only the Zoom recording itself.

*What the recording revealed*

At the preliminary hearing, Carter asked Tim several times whether they had a storage agreement. Tim said, "No," several times. Later, Carter asked whether Tim recalled telling detectives that Carter was storing items for him. Tim said, "I don't recall." After Carter asked a question labeled as unintelligible in the transcript, Tim said, "I sure as heck didn't say—tell you to sell anything if . . . if you were storing anything. I don't—I don't—I don't recall that. I don't recall having any conversation with you about storing anything."

We hold that this denial of a free transcript is not reversible error. We see no difference between an audio tape of a hearing found to be an acceptable substitute for a transcript in *Brown* and a recording of a Zoom hearing here. The offer of the Zoom recording is sufficient to satisfy equal protection rights here. It was Carter's choice not to use the recording.

*Did the judge's negative comment to Carter deny him a fair trial or was it harmless error?*

Before he testified, Carter asked the trial judge if there was a printer that he could use to print his exhibits. Carter stated that he was not afforded all the

9

amenities that the State had such as printer ink and thumb drives. The judge denied the request. The judge said, "I'm sure you have a story of woe that you would like to share with everyone in the courtroom." The court then swore in Carter for his testimony.

Carter contends that the trial judge's comment suggested to the jury that Carter was someone who readily invented weak excuses. Since this case boiled down to a credibility battle between Carter and the Bishops, the comment was not harmless. The State contends that the trial judge's comment was isolated and harmless.

A claim of judicial comment error is serious. A trial judge should endeavor to conduct the trial in an atmosphere of impartiality and refrain from remarks that may injure a party. The judge should be an example of dignity and impartiality, should exercise restraint over personal statements, should avoid personal predilections, and should control personal emotions. The trial judge should not permit any person to embroil him or her in conflict in the courtroom. When it becomes necessary during the trial to comment upon the conduct of witnesses, counsel, or others, the comments should be made in a dignified and restrained manner, avoiding repartee. The judge's comments and rulings should be limited to what is reasonably required for the orderly progress of the trial and should refrain from unnecessary disparagement of people or issues. *State v. Miller*, 308 Kan. 1119, 1154-55, 427 P.3d 907 (2018).

These duties are especially important when the credibility of the defendant is involved because jurors have a natural tendency to look to the trial judge for guidance. See *State v. Hamilton*, 240 Kan. 539, 547, 731 P.2d 863 (1987).

10

Such errors are evaluated under a constitutional harmlessness test. That means the party benefiting from this judicial comment—the State here—must prove that there is no reasonable possibility that the claimed error affected the guilty verdict here. See *State v. Blevins*, 313 Kan. 413, 423, 485 P.3d 1175 (2021). The State has failed to meet that burden.

We have several questions that the record cannot answer. Why did the judge say, "I'm sure you have a story of woe that you would like to share with everyone in the courtroom Mr. Carter"? Was the judge being glib, making a joke? Was he being impatient with a pro se defendant? Did he mean to show doubt about what the defendant said? Was the judge playing favorites?

A words-on-paper transcript fails to give us the tone of voice of the judge and the facial expressions that were used when this comment was made. Those important aspects of human communication are not available to us here. Instead, it is up to the State to show us that this comment was harmless.

Frankly, it is unconvincing when the State merely asserts that this was but one comment in a three-day trial. This trial was a search to find which side was telling the truth. There was no real dispute about the property. The trial boiled down to whether Carter was believable. The judge's comment is significant and prejudicial. The *Hamilton* court pointed out an important lesson: jurors have a natural tendency to look to the trial judge for guidance. What lesson did this jury learn from this comment by the judge? Were Carter's statements merely tales of woe?

Given the nature of the jury's task here—deciding between the credibility of the two sides of this story, we cannot hold this comment harmless. The State has failed to show that there is no reasonable possibility that this error affected the

11

verdict under the rule in *Blevins*. This judicial comment error is grounds for reversal.

*Were the court's responses to the jury's questions legally incorrect?*

The State originally charged Carter with theft between December 7, 2021, and April 5, 2023, in Butler County. The State later shortened that period alleged in the Information to claim the theft occurred between October 22, 2021, and December 11, 2021.

The jury was instructed the charge of theft required the State to prove:

"1. The defendant obtained or exerted unauthorized control over the property.

"2. The defendant intended to deprive the owner, to wit: Timothy Bishop, Kimberly Bishop, or Total Installation permanently of the use or benefit of the property to wit: blue and white 2003 Yamaha z450 motorcycle . . . miscellaneous tools, a BlastPro Shock Blaster machine . . . and Lincoln electric welder . . . .

"3. The value of the property was of the value of at least $1,500.00

"4. This act occurred on or about the 22nd day of October 2021 through the 11th day of December 2021 in Butler County, Kansas."

During its deliberations, the jury asked, "Is the jury allowed to consider any acts, or information, after December 11, 2021? For example do we consider the intent and act of theft happened between dates listed Page 4, No. 4?" The presiding juror clarified, "Are we supposed to only consider the information between those two dates given . . . [w]hen considering 1, 2, and 3 on that page?"

12

The trial court responded "yes" to the first question. To the second question, the court responded, "You may consider all of the evidence presented, regardless of the time that the evidence arose to determine if the theft was committed." Carter did not object to the answers given by the court.

The record shows that Kim had testified their equipment went missing sometime between October 6 and December 1, 2021.

Carter contends that the trial court's response to the jury question expanded the jury instruction and was clearly erroneous. He argues the unlawful acts and unlawful mental state must have both occurred within the dates charged in the Information. The timeframe was important because the property was found at Carter's residence or sold by Carter outside that timeframe.

Because Carter made no objection at trial, we must employ a different standard of review. We will therefore review this claim using the clear error standard of review set out in K.S.A. 22-3414(3). *State v. Walker*, 308 Kan. 409, 424, 421 P.3d 700 (2018).

Caselaw provides clear guidance on this point. A trial court is vested with much discretion in answering a deliberating jury's questions. When a jury asks a question that is irrelevant or already adequately covered by the jury instructions, the trial court may decline to answer such question and direct the jury to reread the instructions already given. The jury must be properly instructed on the basic elements of the criminal offense on trial. If a jury question indicates the jury is confused on a clear-cut question of law pertaining to the essential elements of the crime, the trial court has a positive duty to clarify. *State v. Bandt*, 219 Kan. 816, 823-24, 549 P.2d 936 (1976).

13

The timing of an offense is not as crucial as Carter argues. Legally, we know that the precise time of the commission of an offense need not be stated in an indictment or information. It is sufficient if the commission is shown to have been within the statute of limitations, unless the time is an indispensable ingredient in the offense. K.S.A. 22-3201. The State need not prove the precise time a crime occurred unless it is an essential element of the offense. *State v. Jackson*, 239 Kan. 463, 471, 721 P.2d 232 (1986), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

Timing was important here, but it was not an essential element of the crime. The jury could have believed Carter initially took the property to store it for the Bishops but that he later had a falling out with them and developed the intent to commit theft and exerted unauthorized control over the property when he sold some of the items. Since Carter did not sell the items until well after December 2021, both the unlawful act and intent could have occurred outside the timeframe charged.

The trial court's responses to the jury's questions were technically correct. The jury could indeed consider all the evidence to determine whether a theft had occurred. But the trial court did not answer the jury's question concerning whether the intent and act of theft had to happen between dates given.

It was Carter's burden to show that the trial court clearly erred. Carter barely briefed this issue. He has failed to show the trial court's technically correct response to be error.

14

*Did the trial court correctly bar the admission of a Ring video?*

During his cross-examination of Kim, Carter sought to play some Ring camera video recordings of the search of his property to show that Kim was searching through a trailer at his home. The State objected because this witness could not lay foundation for a video. The court sustained the objection. Carter again sought to play the footage during his cross-examination of Officer Michael Shinert. The court again sustained the State's foundation objection. Carter sought to play the footage during his daughter's testimony because she was there during the search. The trial court did not allow Carter to play the footage because he did not have it on a thumb drive that could be preserved for the record.

We hold these rulings to be erroneous. All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision. See K.S.A. 60-407(f); *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

A proponent of evidence must lay a foundation for its admissibility. Foundation merely refers to preliminary questions to establish that evidence is admissible. *State v. Banks*, 306 Kan. 854, 866, 397 P.3d 1195 (2017). By statute, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." K.S.A. 2024 Supp. 60-464(a).

The burden of authentication is minimal or slight. There is no precise formula to determine authenticity. Indirect or circumstantial evidence can suffice. The proponent need only to offer evidence upon which a reasonable juror could conclude that the evidence is what the proponent claims it to be. Discrepancies and conflicting evidence go to the weight—not the admissibility—of the evidence. *Jenkins*, 311 Kan. at 50-51.

15

There is no requirement that the person who lays foundation for a video be the one who maintained the camera system, downloaded the video from the camera, or copied it onto a portable device. *State v. Dreher*, No. 127,098, 2025 WL 439239, at *6 (Kan. App. 2025) (unpublished opinion); *State v. Richard*, No. 122,568, 2021 WL 3824199, at *13 (Kan. App. 2021) (unpublished opinion).

Foundation for a video can be established by the testimony of a witness who participated in the events recorded on the video and can verify that what was recorded is a true and accurate representation of the events that occurred. *State v. Pruitt*, 42 Kan. App. 2d 166, 176, 211 P.3d 166 (2009) (photographs); *State v. Miles*, No. 110,511, 2014 WL 7565767, at *7 (Kan. App. 2014) (unpublished opinion) (video); 16 Am. Jur. Proof of Facts 3d 493, § 9.

*The context of this offer of evidence is important here.*

The law enforcement officers asked the Bishops to attend the second search of Carter's residence and identify their property. Kim testified that they were working together with law enforcement and sifting through a lot of stuff that was in the garage. She said she used pictures she had of her property to identify items found at Carter's house. Carter asked her if she actually searched through the items in the garage herself. She responded, "Yes." Upon further questioning she said, "I didn't search/look in bins. I just looked at what was there. I didn't search into things or open things to—to look inside them."

At that moment, Carter sought to play a Ring camera recording of the search. He said it would show Kim searching the trailer at his home—putting gloves on and digging through everything in the trailer. The State objected because Kim could not lay foundation for a video. The court sustained the objection.

16

Carter sought to play the footage during his cross-examination of Officer Michael Shinert. Officer Shinert testified the Bishops were with him during the search, but they were only allowed to look over his shoulder to confirm things were theirs. "I would search through the property; they would see something that was theirs and then go through it."

Carter said, "I have video evidence that I would like to ask the witness to verify to be accurate and true that—before I could present it to the jury." The State objected on foundation grounds. The court sustained the objection because the officer was not the source of the original recording. Carter explained that the video footage went to the credibility of the witnesses and that it would show that the witnesses had not been truthful in their testimony concerning what happened during the search.

Carter again sought to play the footage during his daughter's testimony to give an accurate and true description because she was present during the search. The trial court did not allow Carter to play the footage because he did not have it on a thumb drive that could be preserved for the record.

Our review of the record reveals that Carter's witnesses could have established foundation for the video if they were on the video. Carter was cut off by the trial court. He asked for the opportunity to ask the witnesses if the video was a true and accurate depiction of the search before the video was presented to the jury. But the trial court denied him that opportunity. Even though trial courts are given much discretion when excluding evidence for failure to establish a foundation, it was an error for the trial court not to give Carter the chance to do so. The trial court ruled erroneously that the witnesses could not *as a matter of law* lay foundation for the video. The trial court specifically ruled the officer could not lay foundation because he was not the source of the original recording. But there is

no such requirement that a foundation witness be the source of an original recording.

*We will not address Carter's claim of cumulative error.*

Because we deem the judicial comment error reversible, we need not address Carter's cumulative error claim.

Carter was entitled to a fair trial. He did not receive one.

Conviction reversed, and case remanded for a new trial.

Reversed and remanded with directions.

\* \* \*

PICKERING, J., concurring:  I agree with the well-reasoned majority opinion except with respect to the trial court's issuance of a non-PIK instruction on the alleged stolen items' monetary value. Instead, I would find that the trial court's issuance of jury instruction No. 7 directly defies the trial court's non-factfinding role when instructing a jury.

As a reminder, jury instruction No. 7 reads:

"The State did not present evidence of value on many of the miscellaneous tools claimed to be involved in the theft charged in Count One. Therefore, you may not consider the value of those items in determining whether the State has met its burden to show that the value of the property claimed to

18

have been taken equals or exceeded a value of $1,500.00. You may only consider the evidence of value presented regarding the Blast Pro Shock Blaster Machine, Colossus Floor Grinder, S36 Hepa Vac, 5600 (Panther) Ride on Floor Scraper, Industrial Electrical Cord, Hubble receptacles, and 2003 Yamaha Motorcycle in making such value determination.

"You may consider the state's claims of miscellaneous tools being taken when considering the State's other claims required to be proven, including the Defendant's intent."

Essentially, jury instruction No. 7 includes the trial court's *factual* determination of the alleged stolen items' monetary value. That is, this non-PIK instruction candidly states for which specific items the State *did* and *did not* present valuation evidence. As a result, the jury received a *judicial* factual determination about the State's evidence, which, absent unique circumstances, is discouraged because the faulty instruction interferes with the jury's role as factfinder. *United States v. White Horse*, 807 F.2d 1426, 1430 (8th Cir. 1986).

To better understand the trial court's error in issuing this instruction, a short review of the trial court and jury's roles with respect to jury instructions is helpful. The Kansas Supreme Court has explained that "[t]he purpose of instructing the jury is to guide the jurors in their deliberations and to aid them in arriving at a legally proper verdict. It is the trial judge's duty to explain to the jury the law of the case and to point out the elements necessary to be proved by the State in a criminal case." *State v. Cathey*, 241 Kan. 715, 730, 741 P.2d 738 (1987), *overruled on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). Accordingly:

"'In a criminal trial, the trial judge and the jury have well-defined roles, refined over many years of constitutional adjudication. The trial judge instructs the jury on the law applicable to the issues raised and, in appropriate circumstances, may comment on the evidence. The jury then independently

19

determines the facts, and applies the law to those facts, in reaching its fateful decision.'" *State v. Brice*, 276 Kan. 758, 770, 80 P.3d 1113 (2003).

As these rules suggest, the trial court's duty to instruct on the law naturally differs from the jury's role as factfinder. Given the court's and the jury's contrasting trial duties, when instructing the jury, trial courts should strive not to invade the province of the jury. 276 Kan. at 770.

Despite the trial court's well-established role as it relates to jury instructions, here, the trial court undoubtedly made a factual determination before the jury began deliberations. This jury instruction uncharacteristically stated that the State had not proven the monetary value of certain miscellaneous tools claimed to be involved in the theft charged under Count One. The instruction then tells the jury that it cannot consider this evidence: "Therefore, you *may not consider* the value of those items in determining whether the State has met its burden to show that the value of the property claimed to have been taken equals or exceeded a value of $1,500.00." (Emphasis added.) But the question of whether the State presented evidence of value on *all* of the alleged items—including the miscellaneous tools—is a question of fact for the jury, not for the trial court.

The trial court then makes another factual determination by instructing the jury: "You may *only consider the evidence of value* presented regarding the Blast Pro Shock Blaster Machine, Colossus Floor Grinder, S36 Hepa Vac, 5600 (Panther) Ride on Floor Scraper, Industrial Electrical Cord, Hubble receptacles, and 2003 Yamaha Motorcycle in making such value determination." (Emphasis added.) By this statement, the district court again impermissibly comments about the State's evidence and states the State had presented evidence regarding the monetary values of seven of the alleged stolen items.

20

Jury instruction No. 7, which states the specific items the State *did* present valuation evidence of and which items the State *did not* present valuation evidence of, invades the province of the jury. See *White Horse*, 807 F.2d at 1430 ("[W]hen the judge is no longer deciding the law that applies to the evidence, but rather is applying the law to the facts—facts that are determined after assessing the probative value of evidence introduced at trial—the judge has invaded the jury's province."); *Brice*, 276 Kan. at 770. The district court made factual findings regarding the monetary values of several alleged stolen items. The jury—not the trial court—should factually determine whether the State had proven the monetary values for *all* alleged stolen items.

Additionally, the instruction tells the jury that it should only consider these items in determining if the State met its burden that Carter had stolen items collectively valued at over $1,500. But when a trial court instructs the jury, "the weight of all evidence [should be] left to the jury and special emphasis is not to be given in the instructions." *Cathey*, 241 Kan. at 730. In *Cathey*, the trial court in a criminal trial issued a flight instruction that was "clearly a grave departure from the accepted form." 241 Kan. at 731. The trial court erred because "[s]uch an instruction singles out and particularly emphasizes the weight to be given to that evidence by the jury." 241 Kan. at 731. The better practice is not to "single out and *give undue emphasis* to particular evidence, even though the instruction states the correct principle of law." (Emphasis added.) 241 Kan. at 730-31.

Here, the same error occurs. Jury instruction No. 7 singles out and gives undue emphasis to certain alleged stolen items: the "Blast Pro Shock Blaster Machine, Colossus Floor Grinder, S36 Hepa Vac, 5600 (Panther) Ride on Floor Scraper, Industrial Electrical Cord, Hubble receptacles, and 2003 Yamaha Motorcycle," while disregarding the miscellaneous tools. With these seven items, the jury must consider whether the value of the allegedly stolen items equals or

21

exceeded a value of $1,500. This non-PIK instruction abridges Carter's right to a fair trial; this rather lopsided jury instruction misleads the jury by giving unnecessary emphasis to the State's evidence. This was erroneous. See 241 Kan. at 730.

This non-PIK instruction was not warranted. Our Supreme Court has strongly recommended the use of the pattern jury instructions. The use of pattern instructions is encouraged, though not mandatory. *State v. Torres*, 294 Kan. 135, 147, 273 P.3d 729 (2012). Additionally, the record on appeal does not support the trial court's decision to instruct on which of the items' monetary values the State had proven. Accordingly, I would find that the instruction was unnecessary and, thus, not warranted.

To conclude, I would find that jury instruction No. 7 is erroneous, misleads the jury, and thus constitutes further grounds for a new trial. See *Cathey*, 241 Kan. at 730 ("Instructions which are erroneous and misleading can constitute grounds for a new trial.").